UNITED STATES v. DOLLAR et al.

DOLLAR et al. v. LAND et al.

DOLLAR et al. v. MacGUINEAS et al.

Nos. 30407, 30428.

United States District Court
N. D. California, S. D.

April 6, 1951.

As Amended April 11, 1951.
Motion to Vacate Denied June 22, 1951.
See 190 F.2d 547.

No. 30407:

Philip H. Angell, Sp. Asst. to Atty. Gen., for plaintiff.

Dunne, Dunne & Phelps, San Francisco, Cal., for defendants American President Lines, Ltd., and Joseph A. Tognetti.

Edward G. Chandler, San Francisco, Cal., Warner W. Gardner, Washington, D. C., for defendant minority stockholders.

Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants R. Stanley Dollar, Dollar S. S. Line, Robert Dollar Co. and H. J. Lorber.

Chickering & Gregory, San Francisco, Cal., for defendants Anglo California Nat. Bank of San Francisco.

No. 30428:

Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff.

Philip H. Angell, San Francisco, Cal., for respondents Donald B. MacGuineas, Paul D. Page, Jr., A. J. Williams and Lloyd C. Fleming.

Heller, Ehrman, White & McAuliffe; Martin Minney, Jr., Lloyd Dinkelspiel, San Francisco, Cal., for respondent Wells Fargo Bank & Union Trust Co.

Chickering & Gregory, Frederick M. Fisk, San Francisco, Cal., for respondent Paul E. Hoover.

Arthur B. Dunne, San Francisco, Cal., for respondents Ralph K. Davies, George L. Killion, M. J. Buckley, Arthur B. Poole, Joseph A. Tognetti, T. L. Eliot, E. E. Mann and American President Lines, Ltd.

Edward V. Mills, Jr., San Francisco, Cal., for respondent A. B. Dunne.

HARRIS, District Judge.

The United States of America has filed herein a complaint for possession of personal property and declaratory relief seeking a declaration of rights with respect to the ownership of 100,145 shares of the Class A stock and of 2,100,000 shares of the Class B stock of American President Lines, and of certificates representing said shares, and has applied to this Court for a preliminary injunction. Consolidated with the hearing on this motion is a request made by American President Lines with respect to instructions as to conflicting claims to the ownership of the stock and as to the conduct of the officers and directors with respect to an order on mandate modifying the final judgment made and entered by Honorable Matthew F. McGuire, District Judge, United States District Court for the District of Columbia, and registered herein under the provisions of Section 1963, Title 28 U.S.C.A., under date of March 19, 1951.

Counsel for the Dollars, et al., seek an adjudication against the above named respondents, consisting of executives, directors, attorneys for the American President Line (referred to hereinafter as "APL"), as well as the Wells Fargo Bank & Union Trust Company as transfer agent, for alleged contempt of the aforesaid order.

The matter has come before this Court regularly as a consolidated cause and has been heard on oral testimony and elaborate affidavits, filed herein by respondents, and by the Government.

The Dollars originally brought suit on November 6, 1945, to recover from the then members of the Maritime Commission shares of the common stock of the American President Lines (formerly Dollar of Delaware) which they had transferred to the Commission pursuant to "adjustment agreement of August 15, 1938." Their contention was that the stock had been pledged, that the underlying debt had been paid off and that they were entitled to return of the stock. Defendants' contention was that the suit was an unconsented one against the United States and on the merits, that title to the stock had been transferred outright to the United States acting through the Maritime Commission and the 1938 agreement was not one of pledge. The original suit took many turns, both procedurally and on the merits, and has been

dealt with by both the trial and appellate courts.[1]

The case was tried before Honorable Matthew F. McGuire, Judge of the District Court of the District of Columbia, and after a lengthy trial and a voluminous record, he upheld the contention of the defendants that the transaction resulted in the acquisition of the stock and that the Dollars had transferred outright ownership to the Government. 82 F.Supp. 919.

Thereafter, the Court of Appeals reversed the decision, 184 F.2d 245, and subsequent petition for certiorari was denied. 340 U.S. 884, 71 S.Ct. 198. Many motions and procedural steps were thereafter taken by both the individual members of the Maritime Commission and by the Dollars, et al., which finally eventuated in the order more recently made by Judge McGuire.

To fully comprehend the scope of his recent order (and its scope must be fully considered for contempt adjudications are sought thereon), it is necessary to briefly relate the events leading up to its making, as well as the surrounding pronouncements of the Court of Appeals of the District of Columbia Circuit.

Under date of December 11, 1950, counsel for the Dollars, et al., appeared before Judge McGuire seeking a final order after mandate of the Court of Appeals. It was the contention of counsel that an order should be made adding Secretary of Commerce Charles Sawyer as a party defendant. The trial Judge, after seriously questioning jurisdiction, finally made an order which, in substance and effect, assumed to adjudicate title to the stock in question as against all persons.[2] An appeal was prosecuted to the Court of Appeals and the order of Judge McGuire was modified. 188 F.2d 629, 631. The appellate court therein said: "The result, which is inescapable from the very nature of the controversy, is paradoxical.[3] In an action between a private individual and a public official, the court decides that the United States has no interest in the property involved and so the action will lie, *but the ensuing judgment is effective only as to the parties before the court and is not res judicata against the United States, not a party.*"

The reviewing Court then noticed that the District Court, on the return of the mandate entered a judgment assuming to divest the title of any persons under the provisions of Rule 70, Fed.Rules Civ.Proc. 28 U.S.C.A. This paragraph [4] was modified by the Court of Appeals and expressly limited the same to possession of the shares as against defendants.[5]

Thereafter, the Court of Appeals undertook to bring in Charles Sawyer as Secretary of Commerce under rule 71, F.R.C.P.[6] upon the ground that the litigants had there-

1. The citation of, a resume of the decisions herein, as well as all procedural steps taken, may be found as an Appendix hereto.

2. Civil Action No. 31468, 82 F.Supp. 919; Order on Mandate and Final Judgment, Filed December 11, 1950.

3. The paradox has probably been created by over-extension of doctrine of United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

4. "* * * If real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. * * *"

5. No. 10875 U. S. Ct. of Appeals, decided Jan. 31, 1951, 188 F.2d 629, 631: "2.

That plaintiffs are entitled to possession of the shares as against defendants, and the defendants are ordered and directed to deliver forthwith to the plaintiffs the said shares. The possession to which plaintiffs are entitled is an effective possession of the shares. In so far as such right requires action on the part of defendants in addition to physical delivery of the certificates, such action is hereby directed to be taken. Plaintiffs are entitled under this judgment to all rights belonging to possessors of the shares. Plaintiffs are further entitled, as provided by Rule 70 of the Federal Rules of Civil Procedure, 'to a writ of execution or assistance upon application to the clerk' of this court, if such writ becomes necessary."

6. "Rule 71. When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he

tofore entered into a stipulation wherein it was agreed that the parties would not sell or otherwise dispose of the shares in question pending final determination. This stipulation was approved by court order.[7]

It is significant also that the United States Court of Appeals for the District of Columbia, on appeal decided January 31, 1951, in its per curiam opinion deleted the following language in the opinion: "If the Secretary of Commerce has possession of the shares, and if he were a party to the suit, the order of the court, as herein modified, would be lawfully enforceable against him."

Thereafter, the opinion was amended in this respect on February 8, 1951, to read: "If the Secretary of Commerce now has custody or possession of the shares, he obviously acquired such custody or possession since the beginning of this action, indeed since the order of June 11, 1947. Obedience to the order about to be entered pursuant to this opinion is, therefore, enforceable against him, and he is liable, under Rule 71, supra, to the same process for enforcing obedience to that order as if he were a party." Per curiam. 188 F.2d 632.

It is crystal clear that the jurisdiction, if any there is, with respect to Charles Sawyer as Secretary of Commerce is predicated solely upon the stipulation referred to and the order of Court approving the same of June 11, 1947, which stipulation has already been referred to.

The Court of Appeals, as well as the District Court, under said Rule 71, now asserts jurisdiction over Sawyer as Secretary and as a public official, in requiring him to endorse the shares in question and to engage

in other affirmative acts in order to give to the Dollars *"effective possession"* of the shares.[8]

In connection with the order of Judge McGuire on mandate modifying the final judgment dated March 16, 1951, it is significant[9] that the Judge struck from the proposed order submitted to him by counsel for the Dollars the following provisions as proposed:

"Said Charles Sawyer shall forthwith revoke any and all proxies that he may have given to anyone whomsoever to vote any of the B stock referred to above and 100,145 shares of the A stock or any part thereof, at the annual stockholders meeting of American President Lines, Ltd. to be held on Monday, March 19, 1951, or at any adjournment or continuance thereof, and shall forthwith execute and deliver an irrevocable proxy to E. H. Hall, plaintiffs' nominee, authorizing E. H. Hall to vote the said stock at said annual meeting or at any adjournment or continuance thereof, and shall execute no proxies to anyone else. Said proxy to E. H. Hall shall be delivered to him by delivery to said Moses Lasky as plaintiffs' attorney.

\* \* \* \* \* \*

"That any and all proxies that said Charles Sawyer may have executed and given to anyone whomsoever to vote any of said B stock or any of the 100,145 shares of the A stock at said annual meeting or at any meeting are revoked;

"(b) That an irrevocable proxy shall be deemed to have been given by Charles Sawyer to E. H. Hall to vote said stock at said annual meeting or any adjournment or continuance thereof;

\* \* \* \* \* \*

---

were a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party."

7. "It is hereby stipulated and agreed by and between the parties hereto that until the final determination of this case, the defendants will not, nor will any of them, either directly or through any agents, assistants, deputies, or employees sell, transfer, or otherwise dispose of the possession or custody of any of the shares

of stock which are the subject matter of this suit or of any of the certificates representing said shares of stock \* \* \*"

8. No. 10875 U. S. Ct. of Appeals, decided Jan. 31, 1951. \* \* \* "The possession to which plaintiffs are entitled is an effective possession of the shares. \* \* \*" See Footnote 5 herein.

9. See concurring opinion of Mr. Justice Reed, Land v. Dollar, 330 U.S. 731, at page 741, 67 S.Ct. 1009, 91 L.Ed. 1209.

"That said American President Lines, Ltd., its President, Secretary and Directors are instructed that by virtue of said Order on Mandate plaintiffs are entitled to vote said shares.

\* \* \* \* \* \*

"It is further ordered that this Court retains jurisdiction to enter such further orders as may be necessary or appropriate to enforce this Order or to give plaintiffs effective possession of said shares." [10, 11]

Charles Sawyer, as an individual, involuntarily delivered to the Clerk of the Court the certificates in question, but refused under the advice of the Attorney General of the United States to endorse the same. The Clerk undertook to endorse the certificates and they were delivered to the Dollars.

On the 19th day of March, 1951, at 2 o'clock p. m., in the City and County of San Francisco, at the office of APL, there was conducted a stockholders' meeting for the purpose of electing a board of directors and a President for the next ensuing term. Conflicting claims of the Dollars, et al., as well as the government of the United States, were made upon the officers and directors of the APL prior to said meeting with respect to ownership of the shares and the certificates representing the same. Charles Sawyer had theretofore executed a proxy for the controlling 92% of said stock and the Dollars undertook, in turn, to vote the stock.[12]

Written demands had theretofore been made by the Dollars for the transfer of the shares on the books of the corporation. In addition, similar demands were made upon the Wells Fargo Bank and Trust Company as transfer agent. In the presence of conflicting claims to ownership, George Killion, President of APL, employed the services of Arthur B. Dunne, trial lawyer and corporation counsel, to make an independent survey of the records and proceedings and determine what action should be taken. Similarly as to the transfer agent, conflicting claims were made by the Government, as well as by the Dollar interests, as to the ownership of the stock and the right to transfer the same on the books.

Mr. Dunne asserts that he came to an independent judgment, that the issue of ownership had not been finally determined as against the United States of America. In this regard, he concluded: "It was my opinion and advice and it is still my opinion and conclusion that APL acts at its peril in dealing with the stock in controversy or in dealing with the record thereof on its books and that it should do nothing to change the situation as the same existed on its books on March 15, 1951, without order of court." Return to order to show cause, p. 17.

The proxy of Charles Sawyer was recognized and voted at said meeting and a slate of directors and a President elected.

With that factual background we may now proceed to a determination of the questions presented:

Although counsel for the Dollars denounce the doctrine of sovereign immunity, we must consider at the threshhold of any discussion of law the recent case of Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, at page 703, 69 S.Ct. 1457, at page 1468, 93 L.Ed. 1628, wherein Mr. Chief Justice Vinson said: "It is argued that the principle of sovereign immunity is an archaic hangover not consonant with modern morality and that it should therefore be limited wherever possible. There may be substance in such a

10. The right to vote the stock and to be registered as owner on the books of the APL is a prerogative of ownership and not possession of the shares.

11. Although Moses Lasky, Esq., one of the counsel for the Dollars, testified at the time of the hearing before this Court concerning the circumstances surrounding the deletion (Tr. p. 74, et seq.), nevertheless such explanatory note was not known by, or otherwise conveyed to, Arthur Dunne, Esq. when he advised his client concerning the apparent intent of the order and its legal purport. Such circumstance, of course, has a significant bearing upon the contempt proceedings and as to the good faith of the parties.

12. A full report of the proceedings is contained in Defendants' Exhibit "F".

viewpoint as applied to suits for damages. The Congress has increasingly permitted such suits to be maintained against the sovereign and we should give hospitable scope to that trend. But the reasoning is not applicable to suits for specific relief. For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government, as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, 'the interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief. * * * ' " [13]

Mr. Justice Douglas, in extending the doctrine of United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, carved out an asserted remedy for the Dollars. It is perfectly apparent that both the Lee case and Land v. Dollar expressly held that title of the United States could not be finally adjudicated without giving the Government its day in court. Therefore, any judgment against the individual members of the Commission is not to be regarded as binding upon the Government.

Mr. Justice Douglas said in part, that: " * * * if it is decided ·on the merits either that the contract was illegal or that respondents are pledgors, they are entitled to possession of the shares as against petitioners, though, as we have said, the judgment would not be *res judicata* as against the United States. See United States v. Lee, supra, 106 U.S. at page 222, 1 S.Ct. [240], at page 262, 27 L.Ed. 171." Land v. Dollar, supra, 330 U.S. at page 739, 67 S.Ct. at page 1013.

In analyzing the decisions of the Court of Appeals of the District of Columbia Circuit as bearing upon this subject, it is fair to observe that the Court has been careful in limiting its decisions and mandate to matters as between the individual parties, members and former members of the Maritime Commission, except in the recent instance wherein jurisdiction is sought against Charles Sawyer in his governmental capacity under the provisions of Rule 71, F.R.C.P.

Counsel for the Dollars have very frankly conceded that the United States of America has a perfect right to institute the suit at bar, No. 30407, United States v. Dollar, but they maintain the government cannot prevail. They further admit that the government has the right to quiet title to the stock and that the complaint may not be met with a motion to dismiss. The government claims, with equal propriety, that they have a perfect right to re-litigate the issues involved. In addition, they claim that additional evidence is to be presented.

If the doctrine of *res judicata* is inapplicable, then it appears that the Government has the right, privilege and opportunity, and, indeed, the duty to maintain the instant suit and all incidents thereto, such as applications for injunctive relief. In the light of the clear pronouncements of the appellate courts, it would seem a dereliction of duty if the Attorney General of the United States failed or neglected to carry out the clear import of the decisions.

This Court is confronted with a claim on the part of the Dollars that they have title to and the *"effective possession"* of the shares of stock and, on the other hand, it is conceded by all parties that the Government has a perfect right to institute the instant suit in declaratory relief and to maintain or invoke such injunctive relief therein as may be necessary and proper.

It is apparent that in the exercise of a sound discretion the *status quo* should be preserved, pending a final determination, and that a preliminary injunction in order to maintain such status should forthwith issue herein for the following reasons:

13. The Larson case effectively, if not expressly, overrules Land v. Dollar, supra.

(a) Serious doubt has been cast upon the validity of the decision of the Court of Appeals, as well as the order of the District Court of the District of Columbia, wherein Charles Sawyer is sought to be brought in under Rule 71, F.R.C.P., not only in aid of execution, but for all practical purposes, as a party defendant in his official capacity.

Assuming, without deciding, that the stipulation already referred to and the order based thereon might in some manner affect Charles Sawyer personally, then it seems to this Court that the outside limits of such an order, within the clear terms of the stipulation would be to require him to deliver possession into the custody of the Court. That he did. To require him to engage in affirmative acts and conduct under the guise of Rule 71, F.R.C.P. would be to constitute him a party defendant for all purposes in his official capacity.

Rule 71, F.R.C.P. cannot afford an indirect method accomplishing that which could not be done directly. However, as a consequence, Sawyer personally and involuntarily delivered up the certificates.

Charles Sawyer, as Secretary of Commerce, was not a transferee from the original defendants, Emory S. Land, et al., in their individual capacities. He apparently cannot be brought in upon the theory of a "joint tort feasor."

Custody of the certificates on behalf of the United States was vested in him by virtue of the Presidential Reorganization Plan, No. 21, of 1950, 15 F.R. 3178, 5 U.S.C.A. following section 133z–15.

Although Charles Sawyer, either in his individual capacity or as Secretary of Commerce, has not directly been brought into the instant contempt proceedings before this Court, nevertheless discussion of this phase of the case is necessary in order to point up, at least in part, the doubt that has been cast upon the final decision of the Court of Appeals, as well as the order of the District Court of the District of Columbia, with respect to the term "effective possession" and as to its legal impact.

■ It is claimed that this court is bound to give recognition to the order of the District Court of the District of Columbia by reason of the filing herein under 28 U.S.C.A. § 1963. Recognition, of course, should be accorded but not *blind* judicial recognition, particularly, when contempt judgments are sought thereon.[14]

It is apparent that it was never the intention of either the District Court of the District of Columbia, or the Court of Appeals, to finally pass upon or adjudicate title against the United States. However, although the decrees were limited to "possession" or "effective possession," by imperceptible degrees it is sought to adjudicate final and ultimate title.

Counsel for the Dollar interest, with great ingenuity, learning and industry, decided to maintain the litigation on a purely personal and not governmental level for admitted strategic reasons and in the light of principles of law which they maintained were applicable. In this Court's opinion, they cannot at this juncture be heard to translate the judgment of the courts of the District of Columbia into a final adjudication of title as against the United States Government acting through any of its governmental agencies or bodies.[15]

(b) Whatever predictions, or dire forebodings, counsel may make with respect to the future of the litigation in United States v. Dollar, No. 30407, it is incumbent to maintain the *status quo*, and in my opinion grave and irreparable injury would result in the absence of the issuance herein of a preliminary injunction.

There is pressed upon the Court for consideration the alleged mismanagement by

14. "In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree so read." Terminal R. R. Ass'n of St. Louis v. U. S., 266 U.S. 17, at page 29, 45 S.Ct. 5, at page 8, 69 L.Ed. 150; In re Miller & Harbaugh, 9 Cir., 54 F.2d 612; Berry v. Midtown Service Corp., 2 Cir., 104 F.2d 107, 122 A.L.R. 1341.

15. Larson v. Domestic & Foreign Corporation, supra.

the Dollar interests, the Korean war effort, the international crisis, and other matters which, if taken singly, would not be a controlling circumstance. In addition, a minority stockholders group has appeared herein protesting vigorously the alleged incompetent management of the Dollars in the past and claiming that such renewed mismanagement *pendente lite* would result in the possible loss of their investment.

█ Counsel for the Government point to the affidavit of Admiral E. L. Cochrane, Chairman of the Federal Maritime Board, and the head of the Maritime Administration, Department of Commerce, setting forth an historical narrative of the operations of the company which, if considered in the light of all of the other surrounding circumstances, impels this Court to exercise its discretion in favor of granting injunctive relief *pendente lite*. United North & South Development Co. v. Raynor, 5 Cir., 124 F.2d 512; Hoy v. Altoona Midway Oil Co., C.C., 136 F. 483.

█ (c) In view of granting the preliminary injunction, the contempt proceedings fall, and accordingly the order to show cause is discharged. It is to be observed that neither American President Lines, nor any of its officers, agents or servants, attorneys or transfer agents were or are parties to the proceedings in the District of Columbia.

However, I do not believe that the drastic remedy of threatened contempt proceedings should be used as a judicial bludgeon to compel or otherwise coerce government officials, business executives and lawyers, into a line of conduct which would require such officials and others to forfeit all claims, benefits and rights reserved and attempted to be conserved for the government of the United States.

There is no evidence of a concerted action between the respondents, that is to say, the executives of the APL, its directors, lawyers and transfer agents,[16] nor is there any evidence with respect to a claimed conspiracy on their part to avoid the consequences of or otherwise thwart or flout the order or decree more recently registered in this court. I believe the respondents acted in good faith and not in contumacy of such order.

(d) The request for instructions on the part of APL and its officers and agents is manifestly answered by the granting of the injunctive relief.

On the Court's own motion,

It is ordered that the opinion and decision and memorandum thereof regularly made and entered on the 6th day of April, 1951, may constitute and serve as the Court's findings of fact and conclusions of law under Rule 52(a) FRCP; the instructions and directions given to counsel to prepare findings, and the form of preliminary injunction, are vacated and set aside.

In conformity with the Court's decision and order heretofore regularly made and entered,

It is ordered, adjudged and decreed that a preliminary injunction shall issue forthwith in form and content as annexed hereto; the United States Marshal is hereby instructed and directed to forthwith serve copies of said preliminary injunction upon the above named defendants and each of them.

## Appendix

Aug. 15, 1938: Adjustment agreement executed between Maritime Commission, Dollars, and others providing for transfer of Dollars' stock in operating company to Maritime Commission, release of Dollars from personal liability on debt of operating company to Government, and new loans of four and one half million dollars by Government to operating company.

Oct. 1938: Provisions of adjustment agreement carried out. Stock of operating company endorsed in blank and delivered by Dollars to Maritime Commission, loans advanced to operating company and name

16. The Wells Fargo Bank and Union Trust Company as transfer agent acted in compliance with established principles of law in the light of the facts, surrounding circumstances and the conflicting claims made upon them. Mears v. Crocker First National Bank, 97 Cal. App.2d 482, 218 P.2d 91.

of operating company changed from Dollar Steamship Line, Inc., Ltd. to American President Lines, Ltd.

1938-1945: Maritime Commission voted transferred stock at all stockholders' meetings of American President Lines.

July 1945: Maritime Commission invited bids to purchase stock. Dollars first demanded return of stock on the ground that they had merely pledged it to secure debts of operating company, which had then been paid off. Maritime Commission refused demand and asserted outright ownership of stock in Government.

Nov. 6, 1945: Dollars, et al. v. Land, et al. D.C.D.C., Civil Action No. 31468. Complaint filed by Dollars against individuals comprising members of Maritime Commission to recover possession of stock.

Dec. 21, 1945: District Court on its own motion dismissed the complaint as an unconsented suit against the United States, not reported.

Mar. 18, 1946: Dollar v. Land, 81 U.S. App.D.C. 28, 154 F.2d 307. · Court of Appeals, on Dollars' appeal from the judgment of dismissal reversed and held that Congress intended the Maritime Commission to be a sueable entity.

Apr. 7, 1947: Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209. Supreme Court on certiorari affirmed the Court of Appeals on the ground that the suit was one to recover possession of specific property allegedly wrongfully withheld, that the District Court had jurisdiction to hear the merits in order to determine the question of jurisdiction, that if the adjustment agreement was illegal or the Dollars were pledgors, under the rule of United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, "they are entitled to possession of the shares as against [Land, et al.], though, as we have said, the judgment would not be res judicata as against the United States."

Concurrently with filing the petition for certiorari the Solicitor General filed a motion to substitute new members of the Maritime Commission in place of certain members who had resigned or died. The Supreme Court first added the new members as petitioners-defendants but in its opinion vacated the order of substitution so that the District Court might pass on the motions on remand. 330 U.S. at page 739, 67 S.Ct. 1009, 91 L.Ed. 1209.

May 26, 1947: After remand of the case to the District Court plaintiffs and defendants stipulated to the addition of new members of the Maritime Commission as additional defendants.

Dec. 2, 1948: Dollar v. Land, D.C.D.C., 82 F.Supp. 919. After trial the District Court held that as a matter of statutory authority the Maritime Commission was authorized to acquire outright title to the stock and that "I am of the opinion therefore that the transfer was outright and one of title and so hold." The District Court dismissed the complaint.

May 24, 1950: After argument of case before Court of Appeals but before decision, Reorganization Plan No. 21 of 1950, 15 F.R. 3178, went into effect, by which the Maritime Commission was abolished and the Secretary of Commerce succeeded to its functions.

July 17, 1950: Dollar v. Land, D.C.Cir., 184 F.2d 245. The Court of Appeals reversed the District Court, reexamined the evidence, and concluded that the Dollars had transferred the stock in pledge and remanded the case for entry of judgment.

Oct. 1950: Petition for certiorari filed by Land, et al. together with motion by the Solicitor General to substitute the Secretary of Commerce as petitioner in place of Land, et al. pursuant to Section 9(b) of the Reorganization Act of 1949, 5 U.S.C.A. § 133z–7(b). Dollars filed memorandum re-motion to substitute suggesting that Supreme Court should not pass on motion to substitute but should transmit it to the District Court, on the ground that Section 9(b) of the Reorganization Act of 1949 had no application and that after remand it would be appropriate, but not necessary, to add Mr. Sawyer's name to the record as a defendant under Rule 25(c), F.R.C.P..

Nov. 1950: The Supreme Court denied certiorari, 340 U.S 884, 71 S.Ct. 198, and

on November 17, 1950 the mandate of the Court of Appeals issued to the District Court. Supp.Tr. p. 1.

Dec. 1, 1950: Dollars filed motion in District Court to enter judgment on mandate of Court of Appeals and to call up for hearing, motion to substitute. Supp.Tr. p. 3.

Dec. 7, 1950: Defendants Land, et al. filed opposition to Dollars' motion for judgment on the ground that they were out of office and no decree should be entered against them, and opposed Dollars' motion to call up for hearing motion to substitute Sawyer on the ground that the District Court had no jurisdiction to pass upon a motion made in the Supreme Court, and that the time to substitute Charles Sawyer as a defendant had expired under Rule 25(d), F.R.C.P. Supp.Tr. p. 5.

On the same day Charles Sawyer, Secretary of Commerce, filed a special appearance and opposition to plaintiffs' motion, without submitting himself to the jurisdiction of the District Court on the ground that he was not a party to the action and that the time to substitute him as a party under Rule 25(d), F.R.C.P. had expired. Supp. Tr. p. 9.

Dec. 11, 1950: District Court entered order on mandate and final judgment holding that "title to the shares in question is in the plaintiffs [Dollars], since they were never legally divested of the same, and the asserted title of all others arising out of the same transaction to the contrary null and and void, and that they are entitled to the delivery and possession of said shares". Not reported, but set out in full in Land v. Dollar, C.A.D.C., opinion of January 31, 1951, 188 F.2d 629, 631.

Dec. 12, 1950: Special appearances by the United States and by the Secretary of Commerce without submitting to the jurisdiction of the District Court, to set aside and vacate the final judgment of the District Court. Supp.Tr. pp. 44, 45.

Dec. 15, 1950: District Court denied the motions to vacate judgment made by the United States and the Secretary of Commerce. Supp.Tr. p. 47.

Dec. 15, 1950: Notices of appeal filed by the United States, the Secretary of Commerce, and by the defendants Land, et al. Supp.Tr. pp. 47–49.

Dec. 15, 1950: Application by the United States to the District Court to stay the judgment pending appeal, with affidavit of E. L. Cochrane filed in support thereof. Supp.Tr. pp. 49–55. Opposition to application for stay filed by Dollars December 18, 1950.

Dec. 18, 1950: Stay pending appeal granted by the District Court.

Dec. 29, 1950: Motion filed by Dollars in Court of Appeals to dismiss appeals.

Opposition to Dollars' motion to dismiss appeals filed by the United States, Secretary of Commerce, and Land, et al., with supporting memorandum of points and authorities.

Jan. 31, 1951: Land v. Dollar, United States v. Dollar, Secretary of Commerce v. Dollar, D.C.Cir., 188 F.2d 629. The Court of Appeals dismissed the appeal of the United States (No. 10875) and dismissed the appeal of the Secretary of Commerce (No. 10876). On the appeal of Land et al. (No. 10868) the Court of Appeals remanded the complaint with direction for entry of a modified judgment which eliminated all reference to the adjudication of title to the stock. The Court of Appeals held that the Dollars were entitled to effective possession of the shares as against the defendants (Land, et al.), that the judgment prescribed to be entered by the District Court would be enforceable against the Secretary of Commerce if he then had custody or possession of the shares, or "against another official, or other officials, against whom the order might be lawfully enforced if he or they were a party or parties to the suit". The Court of Appeals held that "the ensuing judgment is effective only as to the parties before the court and is not res judicata against the United States, not a party".

Feb. 1951: Application of stay of mandate of Court of Appeals pending certiorari submitted to Chief Justice Vinson by Land, et al. and the Secretary of Commerce,

60

supported by affidavit of E. L. Cochrane. Stay pending certiorari granted by the Chief Justice.

Feb. 1951: Petition for certiorari filed by Land, et al. and the Secretary of Commerce (No. 552 Oct. Term 1950) and petition for rehearing of previous denial of certiorari also filed by Land, et al.

Motion for leave to file brief amicus curiae, with proposed brief, in support of petitions for writs of certiorari and for rehearing filed in Supreme Court by minority stockholders of American President Lines, Ralph K. Davies, et. al.

Mar. 12, 1951: Petition for writ of certiorari and petition for rehearing of denial of previous writ of certiorari denied by the Supreme Court. 71 S.Ct. 530; 71 S.Ct. 533.

Mar. 12, 1951: United States v. Dollar, et al., D.C.N.D.Cal., Civil Action No. 30407. Complaint filed in this Court to quiet title of United States to stock.

Mar. 16, 1951: Dollar v. Land, D.C.D.C. District Court entered order on mandate modifying final judgment. District Court also entered enforcement order directing Secretary of Commerce to turn over stock certificates to Dollars, to endorse them in the name of the Maritime Commission and to instruct American President Lines to register the Dollars as owners of the stock, with the provision that in the event the Secretary of Commerce refused to do so such action should be taken by the clerk of that district court.

Mar. 16, 1951: The Secretary of Commerce delivered the stock certificates to counsel for the Dollars but declined to endorse them or to instruct American President Lines to register Dollars as owners.

Notices of appeal from orders of District Court of District of Columbia filed by defendants Land, et al. and by Secretary of Commerce.

Mar. 19, 1951: United States v. Dollar, D.C.N.D.Cal., Civil Action No. 30407. Motion for preliminary injunction filed by the United States.