**UNITED STATES v. DOLLAR et al.**
No. 30407.

United States District Court
N. D. California, S. D.
Oct. 3, 1951.

Donald B. MacGuineas and Philip H. Angell, Special Assts. to the Atty. Gen., for plaintiff.

Gregory Harrison and Moses Lasky of Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants.

MURPHY, District Judge.

This is an action to quiet title to certain shares of stock. On April 11, 1951, this Court, 97 F.Supp. 50, Harris, D. J., entered a preliminary injunction restraining the defendants, now in possession of the stock certificates pursuant to a decree of the District Court, District of Columbia, Dollar et al. v. Land et al., 82 F.Supp. 919, from exercising "effective possession". An appeal has been taken from the granting of that injunction. The Dollar defendants now move to dismiss the complaint, for judgment on the pleadings, and for summary judgment.

The complaint alleges that the United States is the owner of the stock having acquired absolute title pursuant to a written agreement dated August 15, 1938 entered into between defendants, and the United States Maritime Commission (then an agency of the United States Government). It further alleges that pursuant to that agreement the Dollar defendants endorsed in blank the stock certificates and delivered them to a representative of the United States Maritime Commission and that the true intent and legal result of the transfer of the certificates was to vest absolute title to the stock in the United States. The complaint refers to litigation in the District of Columbia courts in the action entitled Dollar v. Land (supra) and alleges that the United States is not bound by any proceedings or judgment in that action since it was not a party thereto.

The answer denies the Government's claims of ownership and sets up several affirmative defenses, principal among which are the claims that the transfer in issue constituted a pledge, that the Commission was without legal authority to acquire ownership of the stock, and that the findings in Dollar v. Land bind the plaintiff in this proceeding.

Some history of the controversy giving rise to this action may be found in the decision on the Government's motion for preliminary injunction, 97 F.Supp. 50, Harris, D. J. A chronological résumé of the preceding five and a half years of litigation which dealt with this same subject matter may be found in the appendix to that opinion. There has been a thorough review of the facts in numerous prior opinions. See Dollar v. Land, 81 U.S.App.D.C. 28, 154 F.2d 307; Id., 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; Id., D.C., 82 F. Supp. 919; Id., D.C.Cir., 184 F.2d 245; Id., D.C.Cir., 188 F.2d 629; Id., D.C.Cir., 190 F.2d 366; Id., D.C.Cir., 190 F.2d 623. We see no reason to repeat them here.

I. *Has This Court Jurisdiction?*

We have been met at the threshhold of this hearing with the Government's objection that we cannot hear the motions during the pendency of the appeal from the preliminary injunction. The reason given is as follows: Prior to 1891 Federal law permitted appeals only from final decrees. By statute of that year appeals from certain interlocutory orders were allowed. This statute (old Title 28 U.S.C., Sec. 227) also contained a priviso that the proceedings in other respects should not be stayed. Upon revision of Title 28 in 1948 this section became Section 1292 and the proviso was dropped. Plaintiff argues that by reason of the deletion an opposite rule was established. Neither reason nor authority is evoked in support of this peculiar construction. It is suggested by the plaintiff that the provision may have been eliminated "perhaps by inadvertence, perhaps out of policy reasons not fully set out in the legislative history * * *." We cannot agree with the Government. In the light of sound and settled appellate theory the proviso in old Section 227 was mere surplusage. Judge Holtzoff, Special Consultant to the Revision Staff, states in 8 F.R.D. 343 at page 344: "The new Judicial Code is a masterpiece of legislative draftsmanship. The phraseology of practically every provision of the old Code has been drastically modified and revised in the direction of *brevity, succinct-*

*ness and simplicity. Redundant and repetitious provisions were deleted."*

·The proviso added nothing to what would otherwise be law, and it was dropped in the revision for that reason.

The injunction pendente lite is a remedy collateral or incidental to trial on the merits. Whereas a final decree disposes of the whole case, and an appeal from it carries the whole case to the appellate court, an appeal from an interlocutory decree, where allowed by law, goes forward on its own record divorced from the merits. The trial court retains power to proceed to a final hearing as to all matters not directly involved in the incidental appeal. We cannot believe that if Congress intended the drastic modification urged by the Government some comment would not have been noted in the Reviser's Notes. But there is none, see Title 28 U.S.C. § 1292.

William W. Barron, Chief Reviser, states, 8 F.R.D. 439 at page 445:

"The usual rules of statutory construction, with one exception, apply to a statutory revision. That exception is important and its reasons should be readily recognized.

"Because of the necessity of consolidating, simplifying and clarifying numerous component statutory enactments no changes of law or policy will be presumed from changes of language in revision unless an intent to make such changes is clearly expressed.

"Mere changes of phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised.

"Congress recognized this rule by including in its reports the complete Reviser's Notes to each section in which are noted all instances where change is intended and the reasons therefor."

Should we proceed in this instance, the Government further argues, we shall be placed in the position of considering issues now pending before the Appellate court, with resultant disorder and confusion. We disagree. The restraining order issued because, in Judge Harris' opinion, grave and irreparable injury would result in its absence. That was a narrow determination sounding largely in discretion. The equally narrow question before the Court of Appeals is whether discretion was abused. Certain matters, such as the standing of the Government to sue, were implicitly dealt with in that preliminary proceeding, but only in so far as was necessary to that determination. No decision of the Appellate Court as to the power of the trial court to issue the injunction or its propriety will impinge upon the questions before us.

II. *Can This Case Be Decided on Motion For Judgment?*

 The Dollar defendants have moved to dismiss the complaint, for judgment on the pleadings and for summary judgment. Since, however, they rely upon matters dehors the pleadings we shall treat the treble-headed motion as one for summary judgment alone. Rule 12(b, c) F.R.C.P., 28 U.S.C.A.; Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 185 F.2d 196, 205.

 While it is true that every simile limps, the motion for summary judgment is not unlike the unveiling of a statue. The motion requires the opposition to remove the shielding cloak of formal allegations and demonstrate a genuine issue as to a material fact. In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail or the adversary has no valid claim for relief (3 Barron and Holtzoff Sec. 1231). Should the adversary establish a substantial issue of fact, the court cannot try it on this motion. But where the only conflict is as to what legal conclusions should be drawn from the undisputed facts, or whether some rule of law precludes litigation, a summary judgment generally lies.

 In this case defendants, by affidavit, have established that in the suit of Dollar v. Land both nominal parties, as well as the court, were constantly reminded of the fact that the suit was being defended by the Government as real party in interest. Second, the decisions and record of Dollar v. Land in the Court of Appeals for the District of Columbia circuit have been brought to our judicial notice. This, we

believe, is proper, for if the motion for summary judgment is based upon the ground that the issues have been determined in another action, the court should be free to consider the record in the other action. See United States v. Sinclair Refining Co., 10 Cir., 126 F.2d 827. Third, in a request for admissions defendants have annexed the stipulation of fact which was entered into between defendants and representatives of the Attorney General who controlled the defense in the prior case, and which, in substance, was the foundation for the former judgment. In the aforementioned affidavit, Mr. Lasky, a counsel for the Dollars in both proceedings asserts that in compiling the stipulation he and representatives of the Department of Justice exhaustively sifted every existing shred of evidence and that no additional fact of any substance could possibly be presented in this action.

 In response to this showing the Government has done nothing. It has presented no opposing affidavits, no depositions, or counter admissions. Although in oral argument it hinted at some "other evidence", it failed to produce it in response to the motion. Obviously, the whole purpose of the summary judgment procedure would be defeated if a case could be forced to trial by merely contending that an issue exists, without any showing of evidence. Last, the Government has sought to evade the defendants' attempt to bring the Dollar v. Land stipulation before us as a part of defendants' request for admissions. We are of the persuasion that the stipulation is properly before us by judicial notice. However that may be, the excuse is made that at least one of Government's counsel is unacquainted with the document, and it is so extensive that it is impossible to admit or deny the matters contained therein without extensive investigation. This strikes us as a bald-faced evasion. The Department of Justice has been living with that stipulation for years. The Government is not in the position of private counsel suddenly injected into complicated litigation. Such an advocate might well rely upon ignorance as an excuse, but all Government counsel had to do was wire the Department of Justice for confirmation. Significantly counsel did not petition the court for an extension of time in order to effect verification. We cannot help but feel that this was but a shallow attempt to keep facts from the court. Under Rule 36 if a party fails to answer satisfactorily a request for admission of the truth of facts or the genuineness of documents the matters contained in the request are deemed admitted. Such admissions, of course, may establish facts on a motion for summary judgment and result in the granting of such a judgment.

 We thus may simply resolve the opposing positions as follows: The Dollar defendants have made an affirmative showing that the issues in this case are the same as those which were before the courts in the District of Columbia and have heretofore been adjudicated. Defendants argue that plaintiff is concluded as to the issues there decided. Or, alternatively, if the Government is not estopped that the case is before us on the identical record upon which the Court of Appeals was compelled to reverse on the grounds that it contained no substantial evidence of absolute transfer. A fortiori, no genuine issue of fact is here presented and a summary judgment must be entered for defendants.

The Government, by inaction, has joined the issue on the former record and asserts that no former adjudication is binding on it, and the facts encompassed by that record are not susceptible to summary judgment.

At the same time plaintiff concedes that if the issues should somehow be res judicata or controlled by stare decisis, then the motion is appropriate.

III. *Is the Judgment in Dollar v. Land Conclusive Against the Government as to the Issues There Decided?*

 The maxim that there must be an end to litigation is one of the most beneficial principles of our jurisprudence, (see 2 Freeman Judgments § 625). It is a pragmatic, growing concept and not an archaic formula. See Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F. 2d 82, 84, 139 A.L.R. 1; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; An-

gel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. Due process requires that a person shall have an opportunity to be heard by a court of competent jurisdiction upon a matter which affects his interests. But the gauging of when, in legal contemplation, he has had a day in court is a practical matter which searches reality and shuns form. As a general rule, only the parties and their privies are precluded from reopening controversies once adjudicated. The parties to an action are those who are adequately described as such in the record and judgment. "Privies", as classified in the Restatement of Judgments, (Sec. 83) includes three groups of persons: (1) Those who have a financial interest in the subject matter of the controversy and who control the action in whole or in part; (2) Those whose interests are represented in the action by a fiduciary or, as in class actions, by one who adequately represents their interests; and, (3) Those who subsequent to the beginning of the action are transferees from a party to the action, or from one of the other groups of privies, of a property interest which was the subject of the litigation or determination. The classic distinction between the operation of strict res judicata and what is commonly described as estoppel by judgment is found in Justice Fields opinion in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. See also Southern Pac. R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 27, 42 L.Ed. 355, Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 719, 92 L.Ed. 898; United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36. The rules operate on parties and privies in various ways. The plaintiff's cause of action is superseded by the judgment and by merger and bar he is precluded from again asserting the claim. If the subject matter of the dispute is an interest in property and the plaintiff prevails, the defendant is foreclosed from again claiming that he has a superior interest, at least until he subsequently acquires some independent interest. A judgment has the further effect of estopping the parties from disputing the existence of a fact, and sometimes a matter of law, essential to the judgment,

the existence of which was controverted and found to exist after active litigation. This preclusion has been variously termed collateral estoppel, estoppel by judgment, and estoppel by decision. (See Scott, Collateral Estoppel by Judgment, 56 Harv.L.R. 1.) As stated above, it is encompassed within the broad doctrine of res judicata and its raison d'etre is to put an end to expensive, repetitious litigation which burdens courts and litigants alike, where once the parties have had a full opportunity to present their cases.

The extent to which these rules apply to a privy depends upon the category to which he belongs. We are concerned only with the first group, and the reasons for the preclusion of those who have participated in an action are the same as those applicable to parties. Section 84 of the *Restatement of Judgments* contains a clear statement of the rule in this regard: "A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound."

"Comment:

"a. Rationale. * * * A person is entitled only to one adjudication of a cause of action or of an issue where he has control of the proceedings; if under the circumstances to which this section applies a person has control over or participates in the control of the proceedings it is not unfair to him that the judgment or adjudication should determine the existence and the extent of interest which are dependent upon the determination of issues in the action leading to the judgment. * * *

"b. Scope of Rule * * * In the same way, where the one in control of the action or the defense has no interest in the precise subject matter of the suit but controls it because of his connection with the transaction out of which the suit arose, he is bound by and entitled to the benefits of

the rules of res judicata upon issues which are actually litigated."

In Souffront v. La Compagnie Des Sucreries de Porto Rico, 217 U.S. 475 at page 487, 30 S.Ct. 608, 612, 54 L.Ed. 846, the Supreme Court stated: " * * * The persons for whose benefit, to the knowledge of the court and of all the parties to the record, litigation is being conducted, cannot, in a legal sense, be said to be strangers to the cause. The case is within the principle that one who prosecutes or defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment, and as fully entitled to avail himself of it, as an estoppel against an adversary party, as he would be if he had been a party to the record."

In Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F.2d 82, 84, 139 A.L.R. 1, the court held that a judgment bound a person not a party who defended the suit on behalf of the record defendant, even though such participation was not open and avowed. The court said: " * * The general principle back of the rules of res judicata has received recent and clear statement by the Supreme Court. 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties.' * * * A litigant is to have his day in court, but only one day in court, against another. The defendant here is in the position of asking for two days in court if he successfully masked his participation upon his first appearance. * * * An argument which seeks to establish a rule directly contrary to this broad principle must justify itself pretty clearly to be successfully maintained."

This rule as part of the growing doctrine of res judicata has been invoked with great frequency during recent years. It is beyond question that if the immediate proceedings were between private parties plaintiff would be estopped from having what euphemistically is termed a "second day in court"—but which in fact might well become a second six years in court.

We thus are brought to the key question: Is the rule of collateral estoppel any less applicable to the Government than it would be to a private litigant similarly situated?

The facts which limn the part played by the Government in Dollar v. Land are unequivocal. There are set out in the affidavit of Moses Lasky numerous passages from a certified copy of the reporter's transcript of the trial. These passages show that almost without exception the attorneys for the Department of Justice who handled the case nominally for the defendants referred to themselves as the "Government". Representative of the position taken and maintained throughout the entire course of the proceedings is the following colloquy:

"The Court: Let me ask you this: *Who is the client here?*

"Mr. Siegel: The clients *technically* are *certain individuals.*

"The Court: Who *is* the client?

"Mr. Siegel: *The United States of America,* if the Court please * * *."

Counsel further stated that *"the Government is the real party in interest."*

Donald B. MacGuineas, an attorney in the Department of Justice, one of plaintiff's attorneys, and one of the attorneys for the defendants in Dollar v. Land testified in his deposition to his official capacity in the Department of Justice and to that of the other attorneys who appeared of record for defendants in Dollar v. Land. He testified that he acted as counsel in that case "in [his] capacity of attorney in the Department of Justice", that as such he assisted another attorney in the Department in the trial, wrote the briefs and argued the cause orally in the Court of Appeals on the merits. As such he and his superior in the Department represented the defendants after the mandate went down, both in the trial court and again on the subsequent appeals, appearing also for the Secretary of Commerce and the United States. As such he prepared the first draft of a petition for certiorari in the United States Supreme Court, the final draft being prepared and filed by

the Solicitor General of the United States. He testified that in all this activity he acted under official assignment from his superiors in the Department of Justice. Asked whether he "acted * * * as attorney in the Department of Justice of the United States", he replied, "Entirely, I have never acted—*I have never done anything in connection with that litigation except in my official capacity as an attorney in the Department of Justice pursuant to instructions from my superior officers.*" And he was compensated solely from the federal treasury.

The part that Government counsel played in the prior proceedings is thus indisputable. They controlled and continue to control every phase of the litigation for the avowed purpose of protecting the interest of the United States in possession of the stock. This claim of right in the Government is in harmony with the defense of Land that he asserted no personal right to the stock but was merely holding it for the government as agent of the government. Despite the Supreme Court's decision as to jurisdiction there was a frank admission that the ultimate impact of Dollar v. Land would strike directly at the Government.

This same type of situation was adverted to in "suits Against Government Officers and the Sovereign Immunity Doctrine" (59 Harv.L.R. 1060) in the following language:

"What is needed is a frank recognition of the frequently camouflaged fact that in practically every case against a government officer the interests of the government are so directly involved that it is actually the major defendant, * * * As a matter of fact, the government is not inarticulate in these cases. The defendant officials are represented by government counsel in the courts, and there is no basis for the assertion that the government's position is not as fully presented and defended as if the government were a party on the record.

"The courts are fond of saying that the government 'cannot be tried behind its back,' but although arresting, this proposition does not take account of the actual situation in these cases."

If we must find formal, as distinguished from de facto, authorization for the part played by the Attorney General, and the Department of Justice under his direction, we think it resides in Title 5 U.S.C.A. §§ 309 and 316. In the former section it is plainly set out that: "(T)he Attorney General may, whenever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor General or any officer of the Department of Justice to do so."

Section 316 states: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State, or to attend to any other interest of the United States."

If, pursuant to this mandate, the Attorney General had formally intervened and become a party to the record, the Government's claim of title would have been there adjudicated. In the traditional sense of the term, the judgment would have been res judicata as to the Government. As there was no formal intervention, the judgment in Dollar v. Land was not res judicata as to any cause of action adhering to the Government. That is why the District Court for the District of Columbia was directed to modify its judgment from one which purported to quiet title against all the world, to one which dealt solely with right to possession.

■ But the fact that the Government, through the Attorney General, did not become a party of record and formally try its title does not mean that as to it the judgment was a nullity. Even though it was not a nominal party to the action the Government voluntarily assumed control of the defense in furtherance of an interest of its own. It enjoyed, in fact, all the rights of an actual party, such as the right to introduce evidence, examine, and cross-examine witnesses, and to prosecute an appeal from the decision of the court. It is under these circumstances that the modern extensions of collateral estoppel come into operation. The Government, just as a pri-

vate litigant is, as to the issues there adjudicated, entitled to one day in Court, and this it has had.

The day when all governmental action, however violative of the public and judicial conscience, was sacrosanct and immune is past. Traditionally governmental functions have receded in relative volume if not in importance, and in response to social demands the sovereign has shed its ermine robes for white collars * * * and some not so white. Sovereign immunity aside, when dealing with its subjects as tradesman or money lender there is no reason why the courts should accord to it inequitable advantage. As recently stated by Judge Peters of the First District Court of Appeals for the State of California, Cruise v. City & County of San Francisco, 101 Cal. App.2d 558, 565, 225 P.2d 988, 993: "Whether an estoppel exists against the government should be tested generally by the same rules as those applicable to private persons. The government should not be permitted to avoid liability by tactics that would never be countenanced between private parties. The government should be an example to its citizens, and by that is meant a good example and not a bad one."

 Nor do we think that the doctrine of sovereign immunity imposes any barrier to this result. That Hobbesian anachronism has been properly the subject of much criticism in recent years. In Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, Mr. Chief Justice Vinson justified it as essential to the operation of government free from constant judicial harassment. In its essence it contemplates that the Government should not be required to respond in specie to the claims of individuals lest its sovereign functions be unduly handicapped. That is a far cry from the situation where the Government itself elects, through its legal representative, to interject itself into litigation between ostensibly private parties. The Government then becomes the actor. To coin a term, it becomes a "quasi-intervenor" seeking to benefit from control of the litigation. The sovereign thus yields its immunity upon the

same rationale as if it formally intervened. The Government cannot both come in and stay out at the same time, and where collateral estoppel is concerned it is what one does, not what he calls his action, that controls. Plaintiff misconceives the scope of the doctrine when it protests that the action of the Attorney General was merely executive in nature. Land and the Commission made no claim to the stock other than that they were holding for the Government. There was no pretense that the Government, through the officer authorized to protect its interests, was defending other than its own possession as the admitted real party in interest. Throughout trial, appeals, petitions for hearing and modification this position was openly proclaimed. It would be difficult indeed to imagine a more conclusive instance of the Government handling the laboring oar. And there is no pretense made that the Government is now seeking to relitigate the very same issues upon the identical record out of other than sheer disgruntlement over the failure of its prior efforts. This court cannot blink at the facts nor will it lend its processes to abuse. The Government having in fact made itself privy (in the enlarged sense of that term) to Land in the prior proceedings is concluded as to the issues adjudicated therein.

Opposed to this conclusion the Government arrays several early cases. The two which most pertinently state what appears to be a contrary rule are Carr v. U. S., 98 U. S. 433, 25 L.Ed. 209 and United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 257, 27 L.Ed. 171. In the latter case the decision in Carr v. U. S. was summarized as follows: "That was a case in which the United States had filed a bill in the circuit court for the district of California to quiet title to the land on which a marine hospital had been built. To rebut the evidence of title offered by the plaintiffs, the defendant had relied on certain judgments rendered in the state courts, in which the unsuccessful parties set up title in the United States, under which they claimed. It appeared that the person who was district attorney of the United States had defended these actions, and the question under discussion was whether the

United States was estopped by the proceedings so as to be unable to sustain the suit to quiet title. [The court then stated] the general doctrine that the United States cannot be sued without her consent, and the further proposition that no such consent can be given except by congress, which is a sufficient reason why they cannot be concluded by an action to which they are not parties. . * * * That the United States are not bound by a judgment to which they are not parties, and that no officer of the government can, by defending a suit against private persons, conclude the United States by the judgment in such case, was sufficient to decide that case, and was all that was decided."

With all due deference to the court which decided Carr v. U. S., it is suggested that insofar as the opinion implies broadly that no intervention by Government legal representatives, unless specifically authorized by Congress, is binding on the United States, it is at odds with modern doctrines as to both estoppel and immunity. With reference to our discussion, supra, so to hold is to convert the shield of sovereign immunity into a sword. If on the other hand, the ultimate holding of the court was that title of the United States could not be adjudicated in such a proceeding, and that the prior judgment were not res judicata as to that cause of action, then the decision is fully reconcilable with ours.

There follows in the Lee case, 1 S.Ct. at page 262, an explanation of the Carr doctrine which again, is not inconsistent with the law as applied in this case. The court there stated: "(S)ince the United States cannot be made a defendant to a suit concerning its property, and no judgment in any suit against an individual who has possession or control of such property can bind or conclude the government, as is decided by this court in the case of Carr v. U. S., already referred to, the government is always at liberty, notwithstanding any such judgment, to avail itself of all the remedies *which the law allows to every person, natural or artificial, for the vindication and assertion of its rights.* Hence, taking the present case as an illustration, the United States may proceed by a bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be obtained. Or it may bring an action of ejectment, in which, on a direct issue between the United States as plaintiff and the present plaintiff as defendant, the title of the United States could be judicially determined. Or, if satisfied that its title has been shown to be invalid, and it still desires to use the property or any part of it, for the purposes to which it is now devoted, it may purchase such property by fair negotiation, or condemn it by a judicial proceeding, in which a just compensation shall be ascertained and paid according to the constitution."

A review of the Carr case shows that the State Court in a prior ejectment proceeding had gone into the question of *title,* and decided it against the defendant officers of the United States. It was this determination which, under prevailing California Law, the appellant sought to make conclusive against the government. Just as we stated in connection with Dollar v. Land, that cannot be done. The Government's claim of title could not be adjudicated without it formally being a party of record. Its suit in this court to quiet title and for an injunction was proper. However, just as with "every person, natural or artificial," it was required to demonstrate that a substantial factual issue was present other than that decided in Dollar v. Land. For "even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." Southern Pac. R. Co. v. United States, supra [168 U.S. 1, 18 S.Ct. 18].

We believe as indicated that the Carr and Lee cases can be satisfactorily reconciled with this decision. However that may be, the law is a growing science. The latest expressions by the Supreme Court as to the principles here applied leave no doubt as to their pertinence to the government.

In Drummond v. United States, 324 U.S. 316 at page 318, 65 S.Ct. 659, at page 660,

89 L.Ed. 969, the Supreme Court stated: " * * * If the United States in fact employs counsel to represent its interest in a litigation or otherwise actively aids in its conduct, it is properly enough deemed to be a party and not a stranger to the litigation and bound by its results. Compare United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023; Id., 8 Cir., 16 F.2d 559, with Logan v. United States, 10 Cir., 58 F.2d 697. But to bind the United States when it is not formally a party, it must have a laboring oar in a controversy."

In the Candelaria case cited in the quotation the court said, 271 U.S. at page 444, 46 S.Ct. at page 564, in answering a certified question: "But, as it appears that for many years the United States has employed and paid a special attorney to represent the Pueblo Indians and look after their interests, our answer is made with the qualification that, if the decree was rendered in a suit begun and prosecuted by the special attorney so employed and paid, we think the United States is as effectually concluded as if it were a party to the suit. Souffront v. [La] Compagnie Des Sucreries, 217 U.S. 475, 486, 30 S.Ct. 608, 54 L.Ed. 846; Lovejoy v. Murray, 3 Wall. 1, 18, 18 L.Ed. 129; Claflin v. Fletcher, C.C., 7 F. 851, 852; Maloy v. Duden, [2 Cir.], 86 F. 402, 404, 30 C.C.A. 137; James v. Germania Iron Co., [8 Cir.], 107 F. 597, 613, 46 C.C.A. 476."

It was the finding of the Court of Appeals for the District of Columbia that the transaction in issue constituted a pledge and not an absolute transfer.

In the proceeding before us the United States does not allege that its claim involves any new or different points of fact or law other than adjudicated by that tribunal.

Plaintiff is therefore estopped to relitigate them in this proceeding.

To hold otherwise would be to enlarge the rather grotesque spectacle of the government which has refused to submit to the rulings of its own courts, and to fix a pattern in future litigation of similar character which would not only make confusion twice confounded, but would tend to destroy the law to which men have given their confidence and their honest respect.

The very object for which civil courts have been established is to secure the peace and repose of society by judicial determination.

The enforcement of their decisions is essential if the social order is to be maintained, for it must be obvious to the meanest apprehension that the aid of judicial tribunals would not be invoked for the vindication of personal or property rights, if as between the parties involved a final conclusion were not contemplated with regard to all matters properly in issue and actually determined.

No case within the purview of our examination has presented a more classic example, and a more urgent need for the application of the doctrine of collateral estoppel.

Accordingly we apply it here.

It is the decision of this court that title resides in the defendants and their motion for summary judgment is hereby granted.

Now, Therefore, it is Ordered, Adjudged and Decreed:

1. That defendant Dollar Steamship Line is the owner of the 2,100,000 shares of the Class B stock of American President Lines, Ltd. referred to in the complaint and 2,075 shares of the Class A stock of American President Lines, Ltd., referred to therein; that defendant R. Stanley Dollar is the owner of 51,174 shares of the Class A stock referred to in the complaint; that defendant H. M. Lorber is the owner of 9,174 shares of the Class A stock referred to in the complaint; and that defendant The Robert Dollar Co. is the owner of 37,722 shares of the Class A stock referred to in the complaint.

2. That the complaint herein be and the same is hereby dismissed with prejudice.