LAND ET AL. *v.* DOLLAR ET AL.*

Decided June 4, 1951.

*Attorney General McGrath* and *Solicitor General Perlman* for Land et al.

*Arthur B. Dunne* for petitioner in No. 702.

*Herman Phleger, Gregory A. Harrison, Moses Lasky, Edmund L. Jones* and *Howard Boyd* for Dollar et al.

PER CURIAM.

(1) Nos. 697 and 702 are before the Court on petitions for certiorari to review, first, an order of the District Court for the District of Columbia requiring that Charles Sawyer endorse certain stock certificates as "United States Maritime Commission, by Charles Sawyer, Secretary of Commerce," and, second, a Restraining Order issued by the Court of Appeals for the District of Columbia Circuit enjoining named petitioners from:

> "proposing, seeking or advocating any step in any proceeding, whether in said suit entitled *United States* v. *R. Stanley Dollar, et al.,* or in any other

---

*No. 353, *Land et al.* v. *Dollar et al.,* on motion for leave to file a motion for reconsideration of denial of certiorari; No. 697, *Land et al.* v. *Dollar et al.,* and No. 702, *In re Killion,* on petitions for writs of certiorari to the United States Court of Appeals for the District of Columbia Circuit; No. ——, *Sawyer et al.* v. *Dollar et al.,* and No. ——, *In re Killion,* on motion to vacate stay of contempt order.

proceeding, inconsistent with strict compliance with and obedience to the orders heretofore entered by this Court in this cause.

"AND IT IS FURTHER ORDERED that said persons are and each of them is enjoined and restrained until further order of this Court from complying with, taking advantage of, or utilizing, or seeking to comply with, utilize or take advantage of said temporary injunction issued by the United States District Court for the Northern District of California, Southern Division, in said cause entitled *United States* v. *R. Stanley Dollar, et al.,* or any order of similar tenor which may hereafter be entered by said court or any other court."

The two orders are before the Court for the first time in Nos. 697 and 702. Certiorari is granted in these cases.

(2) Subsequent to the issuance of the above Restraining Order, the Court of Appeals for the District of Columbia Circuit found named petitioners to be in civil contempt of its prior decrees by reason of, *inter alia,* their activities in connection with obtaining the temporary injunction on behalf of the United States in its suit in the Northern District of California, referred to in the Restraining Order. The order of contempt has been stayed pending disposition of Nos. 697 and 702 as well as the forthcoming petitions for certiorari directed to the contempt order. Motion of respondents to vacate the stay is denied.

(3) No action is taken at this time on petitioners' motion for leave to file a motion for reconsideration of our denial of certiorari in No. 353. The motion is continued on the docket so that there may be no question as to this Court's control over No. 353 for whatever action may be deemed appropriate.

(4) It has been suggested that this Court delay the normal ending of the October Term, 1950, and hear argument within a matter of weeks. No motion for advancement has been filed.

We agree that expeditious disposition of the important issues in this lengthy proceeding is highly desirable. But our desire for expedition must be weighed against the danger to orderly presentation of important issues inherent in hasty briefing and argument. And this is particularly so when it is suggested that we hear argument not only in Nos. 697 and 702 now before us, but also in the cases to come to us from the order of civil contempt in which petitions for certiorari are to be filed.

There is a further consideration militating against premature disposition of the issues presented. There is now pending in the United States District Court for the Northern District of California an action brought by the United States for adjudication of its claim of title in the same shares of stock as those involved in the instant cases. We have heretofore held that judgments entered in the instant cases would not be *res judicata* against the United States. *Land* v. *Dollar,* 330 U. S. 731, 736, 737, 739 (1947). Appeals have been taken from the temporary injunction issued in that suit on behalf of the United States and with which much of the present phase of this litigation is concerned. We are advised that on May 31, 1951, the Court of Appeals for the Ninth Circuit heard argument on a motion to stay the temporary injunction pending appeal from the order granting the temporary injunction and has taken that motion under advisement. On June 1, 1951, the District Court for the Northern District of California began its hearing on defendants' (respondents in this Court) motion to dismiss the complaint and for summary judgment.

For the foregoing reasons, we do not accept the suggestion that hearing argument in a matter of weeks is compatible with the orderly administration of justice.

MR. JUSTICE BLACK and MR. JUSTICE CLARK took no part in the consideration or decision of these applications.

MR. JUSTICE FRANKFURTER does not join in this opinion.

Separate memorandum of MR. JUSTICE FRANKFURTER.

It is not practicable, as a rule, for reasons indicated in my memorandum in *Maryland* v. *Baltimore Radio Show,* 338 U. S. 912, to set forth the considerations that move the Court in granting or denying a petition for certiorari. And since an unexplained announcement of an individual vote on such action is too often apt to be equivocal, it has been my unbroken practice not to note my vote on the disposition of such petitions. However, the petition now before the Court is the latest stage in a long process. In different phases it has been here three times. Because our action. may be misleading, unless viewed in its setting, a plain narrative of the course of this litigation in its bearing on this petition is, I believe, desirable.

1. What is ultimately in issue is the ownership of the Dollar Steamship Lines. As a result of transactions between the Lines and the United States Maritime Commission, which we need not here relate, 92% of the stock of the corporation was in 1945 listed in the name of the Maritime Commission and voted by the members of that body. On November 6 of that year, the former Dollar stockholders (hereafter called the Dollars) brought suit against the members of the Commission, alleging that the stock was unlawfully withheld and demanding its return. The action was brought in the District Court for the District of Columbia, and for four and one-half

years wound its way through the Court of Appeals to this Court, back to the District Court, and once again to the Court of Appeals. 81 U. S. App. D. C. 28, 154 F. 2d 307; 330 U. S. 731; 82 F. Supp. 919; 87 U. S. App. D. C. 214, 184 F. 2d 245. At every stage, the Commissioners were represented by attorneys from the Department of Justice, who asserted as ground for dismissal that the action was a suit against the United States to which consent had not been given. Our decision, 330 U. S. 731, held that, if the allegations of the complaint were true, the action was not against the United States, but rather against the Commissioners in their individual capacities. The District Court decided on the merits that the facts were not as they had been alleged. 82 F. Supp. 919. But on July 17, 1950, the Court of Appeals reversed. It held that the stock of the corporation was unlawfully withheld by the members of the Commission, and that, since title to it had never vested in the United States, the suit was not against the sovereign. 87 U. S. App. D. C. 214, 184 F. 2d 245. We refused to review this decision. 340 U. S. 884. Later, we refused to reconsider our refusal. 340 U. S. 948.

2. The upshot of the litigation at this point was that the Dollars had obtained a final judgment that the members of the United States Maritime Commission were unlawfully withholding the stock of the corporation, and that, as against the Commissioners, the Dollars were entitled to it. To carry out the judgment, the District Court entered an order on mandate on December 11, 1950. That order stated in part that

"title to the shares in question is in the plaintiffs [Dollars], since they were never legally divested of the same, and the asserted title of all others arising out of the same transaction to the contrary [is] null and void . . . ." 97 F. Supp. 59.

3. The members of the Maritime Commission took an appeal from this order. They urged that it was too broad, in that it purported to bind, not only the individual members of the Commission, but also the United States. The Court of Appeals remanded the cause with instructions to enter a narrower order, the terms of which it prescribed. The substance of those terms is as follows:

> "[P]laintiffs [Dollars] are entitled to possession of the shares as against defendants, and the defendants are ordered and directed to deliver forthwith to the plaintiffs the said shares. The possession to which plaintiffs are entitled is an effective possession of the shares. In so far as such right requires action on the part of defendants in addition to physical delivery of the certificates, such action is hereby directed to be taken. Plaintiffs are entitled under this judgment to all rights belonging to possessors of the shares." 88 U. S. App. D. C. ——, ——, 188 F. 2d 629, 631.

In further explanation of its order the Court stated:

> "The District Court is directed to enforce obedience to its order, as herein modified, whether effective process is against the present named defendants or is against another official, or other officials, against whom the order might be lawfully enforced if he or they were a party or parties to the suit.
>
> .        .        .        .        .
>
> "If the Secretary of Commerce now has custody or possession of the shares, he obviously acquired such custody or possession since the beginning of this action, indeed since the order of June 11, 1947 [prohibiting transfer of the stock *pendente lite*]. Obedience to the order about to be entered pursuant to this opinion is, therefore, enforceable against him, and he is liable under Rule 71, supra, to the same

process for enforcing obedience to that order as if he were a party." 88 U. S. App. D. C. ——, ——, 188 F. 2d 629, 632.

4. We were asked to grant certiorari to review this order for enforcement. On March 12, 1951, we refused. 340 U. S. 948. It was at this point that we refused to reconsider our refusal to review the decision on the merits.

5. Accordingly, the case went back to the District Court. That court entered two orders on March 16. The first was in the terms prescribed by the Court of Appeals. The second was designed to enforce the judgment against the Secretary of Commerce, who, under a Presidential Reorganization Plan, had succeeded the Maritime Commission as custodian of the stock shortly before the Court of Appeals entered its decision on the merits. This order directed the Secretary to endorse the stock certificates in his possession in blank, by writing on them the words, "United States Maritime Commission, by Charles Sawyer, Secretary of Commerce." It required further that he deliver the stock to a representative of the Dollars, and that he instruct the corporation to make the transfers of record. In the event that the Secretary failed to endorse the stock before delivery or to issue the instructions prior to March 17, the Clerk of the District Court was directed to perform these acts in his place. 97 F. Supp. 60.

6. Meanwhile, a new proceeding got under way. On March 12, the day we denied certiorari to the decision of the Court of Appeals modifying the order on mandate, the Government filed a complaint in the District Court for the Northern District of California, Southern Division. In this action, the United States was named as plaintiff, and sought relief by injunction, declaratory judgment, and damages against the Dollar shareholders, the corporation, and the transfer agents responsible for the stock. The claim urged was substantially the same as that which Government counsel for members of the Maritime Com-

mission had unsuccessfully advanced in the litigation in the District of Columbia which culminated in the judgment against the individual defendants.

7. On March 19, the Government moved for a preliminary injunction in this California litigation. It requested that the Dollars be restrained from "exercising or attempting to exercise any rights or privileges as the owners" of the stock, from making demands upon the corporation that new certificates be issued in their name, and from transferring the stock certificates in their possession. The Government supported its motion by an affidavit of the present Chairman of the Federal Maritime Board. On the basis of a report of the Maritime Commission to the Congress on April 10, 1939, which referred to the Dollar management as "shockingly incompetent" and charged it with drawing excessive salaries from the corporation and with "[f]ailure to maintain adequate service from the West Coast to the Orient," the Chairman stated that "[s]hould inefficient management replace the existing management" of the corporation, "grave danger exists that this important unit of the American Merchant Marine may deteriorate as it did before when under the control of plaintiffs in the case of *R. Stanley Dollar et al.* v. *Emory S. Land et al.*" On April 6 the District Judge announced that he would issue a temporary restraining order. See 97 F. Supp. 50.

8. That order, dated April 11, is in pertinent part as follows:

> "Now, therefore, it is hereby ordered by this Court that, in order to preserve the status quo pending the determination by this Court as to whether plaintiff on the one hand, or the [Dollars] . . . on the other hand, are the lawful owners of said stock, the [Dollars] . . . be and they hereby are, enjoined pending the entry official judgment in this action, from

exercising or attempting to exercise any rights or privileges as owners of stock certificates . . . , and from making any demands upon [the corporation or its agents] . . . that new certificates representing said shares of stock . . . be issued to [the Dollars] . . . , or that said [Dollars] be registered as the owners of the shares of stock represented by said certificates . . . , and from pledging, selling, transferring, or otherwise disposing of said stock certificates and the shares of stock represented thereby, and

"It is further ordered by this Court that [the corporation and its agents] . . . be, and they hereby are, restrained, pending the entry of final judgment in this action, from issuing any new certificates of stock of [the corporation] representing said shares to [the Dollars] . . . , from registering or recording [the Dollars] . . . as owners of any of the shares of stock . . . , and from in any way recognizing said [Dollars] . . . , as the lawful owners of said shares of stock or said certificates."

9. While these proceedings were taking place in California, appeals were taken to the Court of Appeals for the District of Columbia Circuit from the two orders entered by the District Court for the District of Columbia on March 16. The Secretary of Commerce and the members of the Maritime Commission urged as grounds for reversal that the lower court had misconstrued the mandate of the Court of Appeals, and had jeopardized the United States' claim of title by giving the Dollars power to transfer the stock to a bona fide purchaser for value. They did not assert as grounds for reversing the orders that the Dollars were likely so to mismanage the corporation that assets to which the United States might ultimately be entitled would be wasted. On April 4 the

Court dismissed the appeals, without opinion. At the same time it took under advisement a motion to impose sanctions on the representatives of the Government.

10. The Court of Appeals acted on the motion to impose sanctions by orders dated April 10, for reasons indicated in a statement read in open court on April 6 and an opinion filed on April 11, 1951. 88 U. S. App. D. C. ——, 190 F. 2d 366.

(a) It issued an order requiring the Secretary of Commerce, the Solicitor General, and other officials of the Department of Justice and of the corporation to show cause why they should not be held in contempt for disobedience to the orders of the courts of the District of Columbia. It based this order in part on allegations that the respondents "refused to endorse the certificates and refused to instruct the transfer agent to transfer the shares" as directed by the Court. Instead, respondents "executed proxies in their own names after the decree of this court was known to them," and "warned, in writing, the transfer agent of the corporation not to transfer the shares of stock." In part, the order was based on the allegation that respondents "sought and obtained from the District Court in Northern California an injunction against the Dollar interests, restraining them from attempting to secure compliance with the decree of this court." 88 U. S. App. D. C. at ——, 190 F. 2d at 374. The proceedings to which this order has led are not before us on this petition.

(b) The Court of Appeals issued a restraining order also directed to the Secretary of Commerce, the Solicitor General, and officers of the Department of Justice and the corporation. It recited that these respondents "caused to be instituted" the California suit, and that "in said action said respondents have sought in the name of the United States relief which is contrary to, inconsistent

with, and in nullification of this Court's decisions and orders" in the case. It stated at the hearing on the order that it was not deciding "whether the United States might seek ancillary injunctive relief in any other respect; that is, in any respect save only the defeat and nullification of a judgment already finally entered by a court of competent jurisdiction." It ordered that the respondents, their agents, attorneys, and all persons in active concert with any of them

> "be and they hereby are enjoined and restrained until further order of this Court from proposing, seeking or advocating any step in any proceeding, whether in said suit entitled *United States* v. *R. Stanley Dollar, et al.,* or in any other proceeding, inconsistent with strict compliance with and obedience to the orders heretofore entered by this Court in this cause.
>
> "AND IT IS FURTHER ORDERED that said persons are and each of them is enjoined and restrained until further order of this Court from complying with, taking advantage of, or utilizing, or seeking to comply with, utilize or take advantage of said temporary injunction issued by the United States District Court for the Northern District of California, Southern Division, in said cause entitled *United States* v. *R. Stanley Dollar, et al.,* or any order of similar tenor which may hereafter be entered by said court or any other court."

We have before us for review on this petition (1) the order of the Court of Appeals for the District of Columbia Circuit dismissing appeals from the orders entered by the District Court on March 16 directing that the stock be delivered to the Dollars; (2) the restraining order issued by the Court of Appeals for the District of Columbia Circuit on April 10.

Three other matters concerning this litigation are also now before the Court. They are referred to in a *per curiam* opinion. This memorandum does not address itself to them.

By MR. JUSTICE JACKSON.

Respondents ask the full Court to vacate a stay of proceedings granted by THE CHIEF JUSTICE. I regret that I cannot acquiesce in summary disposition of the motion, for I think the circumstances require the Court to set it down for prompt argument and act only after hearing both sides.

This Court examined the decision of the Court of Appeals that the Dollar interests were entitled to the stock in question and decided that it did not merit further review. 87 U. S. App. D. C. 214, 184 F. 2d 245. Certiorari denied, 340 U. S. 884. The courts below properly understood that we then regarded that litigation as ended and the District Court entered its mandate. When complete compliance was withheld, the mandate was modified to order officials to deliver up "effective possession" of the stock. Certiorari was sought from this enforcement order and we were also again asked to review the merits. We denied both. 340 U. S. 948. To date, "effective possession" has not been delivered.

We may have been right or we may have been wrong in these repeated denials of review. But what the Court of Appeals has now done is try to effectuate a judgment that we, by refusal to review, in effect have confirmed.

Denial by the full Court of this motion fixes it as the Court's policy to suspend enforcement indefinitely, certainly so long as any phase of this matter is pending here. Successive stays will issue as of course until we decide this and perhaps also the case recently commenced in California. No one knows for how long this will con-

tinue. My prediction would be in terms of years rather than months.

Certainly both the appearance and substance of justice require that the parties be heard before the Court denies respondents, for an indefinite period, the benefits of the judgment they have won. We should not overlook the fact that management of this shipping concern is kept out of the hands of those whom years of litigation have adjudged to be its owners, and no protection by bond, condition of the order, or otherwise is provided for them during such time as it is kept in the hands adjudged to have it illegally.

This Court, now asked to vacate the stay order, denies the motion without hearing either of the parties. This matter has become one of considerable delicacy and I should not, in effect, approve an indefinite stay of proceedings without hearing all the argument and information that either party can offer. I do not think denial without hearing is prudent judicial action. No legitimate interest could suffer from a hearing and we would surely be better informed as a result of it.

Even if the parties themselves are not strictly entitled to or do not want to argue this motion, I should require them to do so, for hearings are more important here for the benefit of the Court, as a protection against unwise decision, than for benefit of the parties. It is the Court that is now on trial. When the shoe of contempt was on the other foot, we strongly supported the Government's demand for complete submission to court decrees, even before they were sustained by this Court and though their validity was reasonably in doubt. On this basis a heavy fine was levied against the United Mine Workers. *United States* v. *United Mine Workers,* 330 U. S. 258. See also *McComb* v. *Jacksonville Paper Co.,* 336 U. S. 187.

The spectacle of this Court stalling the enforcement efforts of lower courts while there is outstanding a judg-

ment that some of the Nation's high officials are guilty of contempt of court is not wholesome. The evil influence of such an example will be increased by delay. This Court should exercise utmost care lest it appear to be indifferent to a claim of official disobedience.

Moreover, we owe something in this matter to the Court of Appeals. That court held several hearings, considered every phase of this case in careful and exhaustive opinions, and made detailed findings of fact. It embarked on this effort at enforcement only after this Court had refused to review the basic orders. They were clearly justified in believing that we expected the order to be enforced. Surely we do not want to confirm Mr. Dooley's observation to the effect that an appeal is an occasion for one court to show its contempt for another.

Being outvoted as to the stay, however, I think it is owing to the Court itself, to the courts below, and to both litigants, to hear and decide the controversial orders without delay. Any denial of this motion or continuance of the stay should be conditioned upon a shortening of the time of all parties and an argument of the cases on the merits within two weeks, deferring the Court's adjournment until the controversy is finally cleared up. If the Court of Appeals is wrong, we should promptly vindicate the officials involved. If that court is right, we should not waver in upholding its hand.

I withhold my assent from the *per curiam* opinion of today.