UNITED STATES of America,
Plaintiff,

v.

The LEITER MINERALS, Inc.,
et al., Defendants.

Civ. No. 4379.

United States District Court,
E. D. Louisiana, New Orleans Division.

June 22, 1954.

**440**

George R. Blue, U. S. Atty., M. Hepburn Many, Asst. U. S. Atty., New Orleans, La., for plaintiff.

S. W. Plauche, Jr., Lake Charles, La., for The Leiter Minerals, Inc.

Milling, Saal, Saunders, Benson & Woodward, Charles D. Marshall, New Orleans, La., for The California Co.

WRIGHT, District Judge.

This matter is before the court on motion of the United States for a preliminary injunction against the defendant, Leiter Minerals, Inc., restraining it, pending further proceedings herein, from prosecuting a title suit in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines, Louisiana, against certain mineral lessees of the United States. In that suit Leiter Minerals is claiming ownership of the mineral rights beneath land sold by its predecessor in title to the United States.

On December 21, 1938, the United States acquired from Thomas Leiter a tract of land comprising more than 8,000 acres in Plaquemines Parish, Louisiana. The deed reserved the mineral rights in the land to the vendor with the stipulation that, with certain exceptions not pertinent here, these rights would expire on April 1, 1945. The defendant, Leiter Minerals, Inc., is a Louisiana corporation which claims to have succeeded Thomas Leiter in title to the reserved mineral interest in the land in suit. Neither Thomas Leiter, Leiter Minerals, Inc., nor any other person acting through or under them has ever conducted any mineral operations of any kind pursuant to the reservation of the mineral rights in the deed to the United States.

On March 1, 1949, the United States executed four oil, gas, and mineral leases covering different portions of the property to Frank J. and Allen L. Lobrano who have conveyed operating rights under the leases to the California Company, a California corporation, which has drilled and completed eighty producing wells on the property. The United States has heretofore received royalty therefrom in excess of $3,500,-000. Any interruption in the operation of these wells would, in the event the United States is successful in these proceedings, cause it irreparable damage. Since the date of its acquisition, the United States has also maintained and administered the lands acquired from Thomas Leiter as part of a wild life refuge, thus retaining physical possession of the surface of the land as well as physical possession of the mineral rights by virtue of the mineral operations conducted by its lessees.

The Leiter Minerals, Inc. has filed and is currently prosecuting an action in

the Twenty-Fifth Judicial District Court for the State of Louisiana, Parish of Plaquemines, against the California Company and Allen L. Lobrano in their capacity of lessees under the mineral leases executed by the United States, praying that it, Leiter Minerals, be recognized as "the fee simple, true and lawful owner of all of the oil, gas and minerals, and oil, gas and mineral rights in, on and under the land" acquired by the United States by deed from Thomas Leiter. The United States is not a party to the action before the state court.

The United States has instituted the present litigation before this court against Leiter Minerals, Inc., praying that its title and rights to the minerals beneath the property be quieted, that the various clouds upon the title of the United States in the form of mineral leases executed by the defendant be cancelled, and that an injunction be issued restraining the Leiter Minerals from further asserting or claiming any interest in the said minerals or mineral rights, as well as from the further prosecuting the suit filed by it in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines against the mineral lessees of the United States. The United States also asks for a temporary injunction restraining the prosecution of the action in the Twenty-Fifth Judicial District Court, pending a final determination of the issues here in suit. This opinion covers only the application for a temporary injunction.

The United States contends that the suit brought by Leiter Minerals in the Twenty-Fifth Judicial Court of the Parish of Plaquemines against its lessees is a suit against the sovereign which has not consented to be sued, that, in the present posture of the case, this court has exclusive jurisdiction to determine the ownership of the minerals and mineral rights in question and, therefore, an injunction should be issued by this court staying the state court proceeding against its mineral lessees. The defendant, Leiter Minerals, contends that its action before the Twenty-Fifth Judicial District Court, since it seeks to determine ownership of mineral rights, is in rem or quasi in rem, and, since the state court by virtue of that suit has acquired jurisdiction over the res, it alone has the right to determine the ownership of the minerals and mineral rights in question. Accordingly, it has filed herein a motion to dismiss or stay these proceedings pending the outcome of the proceedings in the state court.

At the outset it may be well to examine the jurisdiction of this court as to this proceeding. It is properly brought, by the United States as plaintiff, under 28 U.S.C. § 1345. It seeks equitable relief in the form of an action to quiet title and to remove clouds on the title of the United States. A federal court has jurisdiction to grant such relief. Mississippi Mills v. Cohn, 150 U.S. 202, 14 S.Ct. 75, 37 L.Ed. 1052; Ridings v. Johnson, 128 U.S. 212, 9 S. Ct. 72, 32 L.Ed. 401; Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 191 F.2d 705; Stricker Land & Timber Co. v. Hogue, D.C., 61 F.Supp. 825; Manhattan Land & Fruit Co. v. Buras, D.C., 43 F.Supp. 361. The application for an injunction against the state proceeding, however, presents a more difficult problem. 28 U.S.C. § 2283 provides that a federal court may not grant an injunction to stay proceedings in a state court except as expressly authorized by an act of Congress, or, where necessary, in aid of its jurisdiction. Even where a federal court may enjoin a state court proceeding, such equitable relief should be granted only when the federal court, "in its sound discretion exercised with the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts,'[1] is convinced that the asserted federal right cannot be preserved except by granting the 'extraordinary relief of an injunction in the

---

1. Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447.

federal courts.'[2] Considering that 'few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies,'[3] the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case."[4] Undoubtedly, one of the highest duties of a federal court sitting in equity is to avoid unseemly conflict of authority between state and federal courts. It is with these principles in mind that this court undertakes a consideration of the application for an injunction against the proceedings in the state court.

■■ In Beers for use of Platenius v. Arkansas, 20 How. 527, 529, 15 L.Ed. 991, Mr. Chief Justice Taney said, "It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another state." This permission can be granted only by the Congress itself. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. No officer of the United States has power to confer on any court jurisdiction of a suit against the United States and, even where the United States has intervened in a litigation pending before any court, no affirmative judgment can be rendered against the United States. Stanley v. Schwalby, 162 U.S. 255, 270, 16 S.Ct. 754, 40 L.Ed. 960; Carr v. United States, 98 U.S. 433, 438, 25 L.Ed. 209; United States v. Shaw, supra; United States v. U. S. Fidelity & Guaranty Co., supra.

In other words, by intervening in an action the United States does not, and cannot, waive its right not to be sued without its consent for the reason that only Congress itself can give that consent.

■ Officers or agents of the United States may be sued, however, for possession of property held by them in behalf of the United States. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. Such an action is not one against the United States and, of course, would not be res judicata as against the United States. United States v. Lee, supra; Land v. Dollar, supra. Where a suit is brought in a state or federal court against officers or agents of the United States claiming property held by those officers for the United States, the United States may bring its own action in a state or federal court asking the court to adjudicate its claim to title to the property involved in the former suit and is entitled to an injunction staying further proceedings therein. United States v. Lee, supra; Land v. Dollar, supra; Land v. Dollar, 341 U.S. 737, 71 S.Ct. 987, 95 L.Ed. 1331; United States v. Dollar, 9 Cir., 196 F.2d 551, 9 Cir., 193 F.2d 114, 9 Cir., 190 F.2d 547, D.C. Calif., 100 F.Supp. 881, D.C.Calif., 97 F.Supp. 50; Brown v. Wright, 4 Cir., 137 F.2d 484; United States v. McIntosh, 4 Cir., 57 F.2d 573; United States v. Babcock, 7 Cir., 6 F.2d 160; United States v. Inaba, 9 Cir., 291 F. 416; United States v. Taylor's Oak Ridge Corp., D.C.Tenn., 89 F.Supp. 28; United States v. Cain, D.C.Mich., 72 F.Supp. 897.

The landmark case in which the right to sue a sovereign without its consent is fully considered both in the prevailing opinion as well as in the dissent

2. Railroad Commission of Texas v. Rowan & Nichols Oil Co., 311 U.S. 614, 615, 61 S.Ct. 66, 85 L.Ed. 390.

3. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971.

4. Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002.

is United States v. Lee, supra. The defendants in that case were military officers who, acting under orders of the President, took possession of certain land and converted one part into a fort and another into a cemetery. Plaintiff brought the action to eject these officers and to recover possession of the land. The trial court held that the claim of the plaintiff to the land was valid and that the defendants were wrongfully in possession. The Supreme Court affirmed the judgment, holding that the assertion by officers of the government of their authority to act did not foreclose judicial inquiry into the lawfulness of their action. It further held that the judgment was not res judicata against the United States because it was not, and could not, be made a party to the suit. The court, in answering the contention that the United States would be prejudiced by a judgment against its officers, said:

"Another consideration is, that since the United States cannot be made a defendant to a suit concerning its property, and no judgment in any suit against an individual who has possession or control of such property can bind or conclude the government, as is decided by this court in the case of Carr v. United States, already referred to, the government is always at liberty, notwithstanding any such judgment, to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights. Hence, taking the present case as an illustration, the United States may proceed by a bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be obtained."

The suggestion made by the court in Lee, that the United States initiate proceedings of its own to quiet its title and to obtain an injunction restraining suits brought against its officers for possession of land held by them for the United States, was used by the United States in the now famous Dollar litigation. In that litigation the Supreme Court held that a suit against individual members of the United States Maritime Commission, asking for possession of certain shares of stock pledged to the United States, was not a suit against the United States. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209. Thereafter, the Court of Appeals for the District of Columbia held on the merits that the Dollars were entitled to possession of the shares. Dollar v. Land, 87 U.S.App.D.C. 214, 184 F.2d 245. Subsequently, the United States filed an action to quiet its title to the shares of stock in the District Court for the Northern District of California and asked for a temporary injunction against the Dollars, restraining them from exercising any rights obtained under the judgment of the courts in the District of Columbia. That Court granted a temporary injunction to maintain the status quo, pending a determination of the title claim of the United States. United States v. Dollar, D.C.Calif., 97 F.Supp. 50. The Court of Appeals for the Ninth Circuit declined to dissolve the temporary injunction, 190 F.2d 547, and in fact, when the District Court decided the case against the United States on the merits of the title, granted a new injunction of its own to preserve the status quo of the District of Columbia proceeding, pending appeal. 193 F.2d 114. Thereafter, the Court of Appeals for the Ninth Circuit reversed the District Court, holding that the United States was not estopped by the possession litigation in the District of Columbia against its agents and was entitled to its own day in court. 196 F.2d 551.

In the meantime, various officers of the United States had been cited for contempt of the Court of Appeals for the District of Columbia for bringing the action in the name of the United States to quiet title and for the injunction in the United States District Court for the Northern District of California.

Land v. Dollar, 89 U.S.App.D.C. 38, 190 F.2d 623. Upon application to the Supreme Court, the contempt orders were stayed and the Supreme Court recognized in its per curiam that the United States was at that time before the District Court for the Northern District of California litigating its claim of title to the same shares of stock as those involved in the contempt cases which, of course, it had a right to do since it was not a party to the possession proceedings in the District of Columbia.

In the case at bar, in the state court litigation sought to be enjoined here, Leiter Minerals is demanding not only possession of property claimed by the United States, but title as well. Obviously, under the authority of the United States v. Lee, supra, and Land v. Dollar, supra, since the United States is not and cannot be made a party to that litigation, the title of the United States to the property cannot be adjudicated therein. Under the same authorities the state court would have the right to determine possession of the property, the judgment therein in no event to be res judicata as to the United States. However, acting on the authority of the United States v. Lee, Land v. Dollar, and the other cases cited herein, the United States has decided to come into this court under 28 U.S.C. § 1345 and ask that its title claim to the property in question be adjudicated, and that pending adjudication the proceedings brought in the state court against its mineral lessees be enjoined. Not only has the United States a right to proceed thusly, but an injunction should be issued to protect the jurisdiction of this court, pending determination of the ownership of the property in suit.

All the parties necessary to make this determination are before this court. The United States, an indispensable party insofar as the state proceedings seek to adjudicate title to the property, is not before the state court. Consequently, since the state court action cannot settle this contest for ownership of these mineral rights between Leiter Minerals and the United States, further proceedings therein can only impinge on the jurisdiction of this court and confuse the real issues in suit. Moreover, if the state court suit is allowed to proceed to final judgment, the rights of the United States to the property in question will actually be determined "behind its back"[5] for the reason that, since ownership of these mineral rights will turn on an interpretation of a state statute,[6] this court and the appellate federal courts may be required, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to follow that judgment in spite of the fact that the United States is not a party to those proceedings. Furthermore, should the state court proceeding come to final judgment dispossessing the mineral lessees of the United States before the litigation in the federal courts is terminated, inestimable and irreparable damage will result to the United States from the interruption in the operations of its lessees on the premises, in the event the United States is ultimately declared the owner of the property in suit. This contingency can be avoided only by an abatement of the state court action.

The defendant, Leiter Minerals, relies most heavily on United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331. In that case the Supreme Court held that the federal court did not have exclusive jurisdiction of the claim of the United States to certain funds of three Russian insurance companies dissolved by the Soviet government in 1918, which funds were in the custody of the state court in New York in connection with proceedings in that court liquidating the insurance companies. The funds were being held subject to appropriate orders

5. Goldberg v. Daniels, 231 U.S. 218, 222, 34 S.Ct. 84, 58 L.Ed. 191.

6. LSA–R.S. 9:5806.

of the court providing for their distribution to creditors, policyholders, and other claimants, in accordance with the state insurance laws. The Soviet government claimed ownership of these funds and assigned its claim to the United States, which filed suit in 1933, eight years after the state liquidation proceedings began, in the United States District Court for the Southern District of New York, and sought to enjoin further proceedings concerning the funds in the state court. The judgment of the federal district court, dismissing the complaint and denying a motion for injunction, was affirmed by the Supreme Court on the ground that the state court had first assumed jurisdiction and control of the funds, and that such control was essential to give effect to that court's jurisdiction to protect the rights of claimants in the state court proceeding, none of whom was before the federal court.

 The significant points of difference between the Bank of New York case and the present action are many and obvious. In the first place, there the funds or res were in possession of the state court. The Supreme Court has held on many occasions that in cases involving insurance liquidation proceedings, the marshaling of assets, administration of trusts and estates, and assignments for the benefit of creditors, the court which first obtains possession of the res or funds, has the exclusive right to determine the disposition of claims against those funds.[7] There is no case, however, from the Supreme Court which holds that the mere filing of a suit claiming ownership of property places that property under the control of the court so that no other court has the right to adjudicate claims against that property. In fact, the decisions seem to be to the contrary. Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256; Mandeville v. Canterbury, 318 U.S. 47, 63 S.Ct. 472, 87 L.Ed. 605; Commonwealth Trust Co. of Pittsburgh v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920.

A second point of difference between United States v. Bank of New York Co. and the case at bar is that in Bank of New York, all the claimants to the insurance fund, possibly hundreds, were before the state court and not before the federal court, whereas here the converse is true. All the claimants to the mineral rights in suit are before this court, and the United States, the party in whose name the record title to the property in question is, not only is not before the state court but cannot be. Nor can the United States intervene in that proceeding, as suggested in Bank of New York,[8] for the reason that to intervene therein would be to make the United States a defendant along with

---

7. United States v. Bank of New York, supra; Penn General Casualty Co. v. Commonwealth of Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850; Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457; Lion Bonding & Surety Company v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Palmer v. State of Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; Farmers' Loan & Trust Company v. Lake Street Elevated Railroad Co., 177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667.

8. In United States v. Bank of New York Co., supra, the court, 296 U.S. at page 480, 56 S.Ct. at page 348, said:

"There is no merit in the suggestion that the United States, in presenting its claim in the state proceedings, would be compelled to take the position of a defendant—being sued without its consent. In intervening for the presentation of its claim, the United States would be an actor—voluntarily asserting what it deemed to be its rights—and not a defendant. We cannot see that there would be impairment of any rights the United States may possess, or any sacrifice of its proper dignity as a sovereign, if it prosecuted its claim in the appropriate forum where the funds are held."

its mineral lessees,[9] and, of course, the United States cannot be a defendant in any case without the consent of Congress. State of Minnesota v. United States, supra; United States v. Shaw, supra; United States v. U. S. Fidelity Co., supra.

 The defendant is in a poor position to urge on a court of equity that it should be allowed to continue its suit in the state court which, as has. been shown, is in effect a suit against the United States. When Thomas Leiter deeded this property in Plaquemines Parish to the United States for valuable consideration, he was bound to know that if any controversy arose between him and the United States involving that deed, he could not sue the United States without its consent except for a money judgment in the Court of Claims under the Tucker Act.[10] He was bound to know that he was dealing with a sovereign which, under the law, can choose the court in which to litigate with private citizens. Knowing these facts, neither he nor his successor in title should ask a court of equity to protect them while they sue the United States "behind its back" in a state court where it cannot be made a party.

Judgment accordingly.

9. Leiter Minerals, in its state court complaint, charges:

"On information and belief, petitioner alleges that defendant, Allen L. Lobrano, purported to secure an oil, gas and mineral lease or leases from the United States of America on or about March 1, 1949; and further, on information and belief, petitioner avers that the said defendant, Allen L. Lobrano subleased or assigned the said mineral lease or leases thus acquired by him to defendant, the California Company, but retained or otherwise secured an interest in the nature of a mineral royalty interest in the oil, gas and minerals owned by petitioner and sued for herein.

"Petitioner further alleges that the lands sold and transferred by the said Thomas Leiter to the United States of America were acquired by the United States by the said deed as prepared by it and dated December 21, 1938, for the sole purpose of establishing a game or wild life refuge; and the consideration paid by the United States did not cover the value of any mineral rights on said lands.

"Petitioner desires, and is entitled to, an accounting from defendants of the total amount of oil, gas or other hydrocarbons or other minerals taken or produced by defendants from the property described in paragraph 2; and petitioner is further entitled to a money judgment against the said defendants for the amount and value of the said minerals so taken by defendants without right or legal authority. Defendants, under the law, are and have been possessors in bad faith of the property involved in this suit."

10. 28 U.S.C. § 1491.