## UNITED STATES *v.* OHIO POWER CO.

No. 312, October Term, 1955. Certiorari denied October 17, 1955.—
Rehearing denied December 5, 1955.—Rehearing again denied May
26, 1956.—Order denying rehearing vacated June 11, 1956.—
Rehearing and certiorari granted and case decided April 1, 1957.

*Solicitor General Rankin, Assistant Attorney General
Rice, Philip Elman* and *Hilbert P. Zarky* for the United
States.

*J. Marvin Haynes, N. Barr Miller* and *Oscar L. Tyree*
for respondent.

PER CURIAM.

On June 11, 1956, we unanimously vacated *sua sponte*
our order of December 5, 1955 (350 U. S. 919), denying
the timely petition for rehearing in this case (351 U. S.
980), so that this case might be disposed of consistently
with the companion cases of *United States* v. *Allen-Brad-
ley Co.,* 352 U. S. 306, and *National Lead Co.* v. *Com-
missioner,* 352 U. S. 313, in which we had granted certio-
rari the same day, *viz.* June 11, 1956. 351 U. S. 981. If
there is to be uniformity in the application of the prin-
ciples announced in those two companion cases, the
judgment below in the instant case cannot stand. Accord-
ingly we now grant the petition for rehearing, vacate the

order denying certiorari, grant the petition for certiorari, and reverse the judgment of the Court of Claims on the authority of *United States* v. *Allen-Bradley Co., supra,* and *National Lead Co.* v. *Commissioner, supra.*

We have consistently ruled that the interest in finality of litigation must yield where the interests of justice would make unfair the strict application of our rules. This policy finds expression in the manner in which we have exercised our power over our own judgments, both in civil and criminal cases. *Clark* v. *Manufacturers Trust Co.,* 337 U. S. 953; *Goldbaum* v. *United States,* 347 U. S. 1007; *Banks* v. *United States,* 347 U. S. 1007; *McFee* v. *United States,* 347 U. S. 1007; *Remmer* v. *United States,* 348 U. S. 904; *Florida ex rel. Hawkins* v. *Board of Control,* 350 U. S. 413; *Boudoin* v. *Lykes Bros. S. S. Co.,* 350 U. S. 811; *Cahill* v. *New York, N. H. & H. R. Co.,* 351 U. S. 183; *Achilli* v. *United States,* 352 U. S. 1023.

*Reversed.*

MR. JUSTICE BRENNAN and MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER and MR. JUSTICE BURTON join, dissenting.

The Court's action in overturning the judgment of the Court of Claims in this case, nearly a year and a half after we denied certiorari, and despite the subsequent denial of two successive petitions for rehearing, is so disturbing a departure from what I conceive to be sound procedure that I am constrained to dissent.

This is a tax case involving the right of the War Production Board to certify that only part of the actual cost of wartime facilities, constructed by a taxpayer at the instance of the Government, was necessary in the national defense and hence subject to accelerated amortization

under § 124 (f) of the Internal Revenue Code of 1939.[1] Claiming that the War Production Board had no power to certify less than the full cost of such facilities, the Ohio Power Company sued the Government in the Court of Claims to recover an alleged overpayment of taxes, asserting that it was entitled to accelerated amortization of the full cost of wartime facilities which it had constructed, and not merely of that part of the cost which the War Production Board had certified as necessary in the interest of national defense. The Court of Claims, sustaining this contention, entered judgment in favor of the taxpayer on March 1, 1955.[2]

On August 12, 1955, the Government petitioned for certiorari, its time for filing having been duly extended. We denied the petition on October 17, 1955. 350 U. S. 862. On November 10, 1955, the Government filed a timely petition for rehearing, requesting that its consideration be deferred until the case of Commissioner v. National Lead Co.,[3] involving this same tax question, had been decided by the Court of Appeals for the Second Circuit. We denied this petition on December 5, 1955. 350 U. S. 919. On February 14, 1956, the Court of Appeals decided National Lead in favor of the Government,[4] and on April 3, 1956, the Court of Claims, in Allen-Bradley Co. v. United States,[5] decided the same tax question favorably to the taxpayer, as it had already done in the Ohio Power case. This, then, provided the Government with the "conflict" which had been lacking at the time when the Court denied its petition for certiorari in the present case. On this basis the Government, on

---

[1] 54 Stat. 998–1003, as amended, 26 U. S. C. §§ 23 (t), 124.
[2] 131 Ct. Cl. 95, 129 F. Supp. 215.
[3] 230 F. 2d 161.
[4] Ibid.
[5] 134 Ct. Cl. 800.

May 3, 1956, petitioned for certiorari in *Allen-Bradley*,[6] and at the same time petitioned for leave to file a second petition for rehearing in the *Ohio Power* case. On May 28, 1956, the Court denied that petition because it was both long out of time and "consecutive,"[7] 351 U. S. 958, and thus for the third time refused to take the case. Nevertheless, two weeks thereafter, on June 11, 1956, the Court, incident to its grants of certiorari in the *Allen-Bradley* and *National Lead* cases, vacated *sua sponte* its order of December 5, 1955 denying the Government's original timely petition for rehearing in the *Ohio Power* case. 351 U. S. 980. And today the Court grants that petition, some 16 months after it had originally been denied, and reverses the Court of Claims' judgment in favor of the taxpayer.

## I.

In my opinion, today's order reversing the Court of Claims violates our own Rules. That order is based upon the Court's order of June 11, 1956, which vacated the order of December 5, 1955 denying the Government's first petition for rehearing of the denial of certiorari.

---

[6] On May 29, 1956, National Lead Company likewise filed its petition for certiorari to the Court of Appeals for the Second Circuit in the case which it had lost.

[7] Rule 58, par. 2, of this Court's Revised Rules provides: "A petition for rehearing of orders on petitions for writs of certiorari may be filed with the clerk . . . subject to the requirements respecting time . . . as provided in paragraph 1 of this rule." Paragraph 1 of Rule 58 provides: "A petition for rehearing of judgments or decisions other than those denying or granting certiorari, may be filed with the clerk . . . within twenty-five days after judgment or decision, unless the time is shortened or enlarged by the court or a justice thereof." There was, of course, no enlargement of the time here. Paragraph 4 of Rule 58 provides: "Consecutive petitions for rehearings, and petitions for rehearing that are out of time under this rule, will not be received."

This June 11 order thus purported to continue consideration of the original petition for rehearing, which is now granted. Under our Rules, I think the order of June 11 was improvidently issued.[8] Had the Government, just prior to June 11, 1956, petitioned to vacate the order of December 5, 1955, the petition would have violated Rule 58 of our Revised Rules, whether considered as, in effect, a petition for rehearing of that order, in which case it would have been out of time, or as a petition for rehearing of the original denial of certiorari, in which case it would have been both out of time and "consecutive."[9] To say that the order of June 11 could escape Rule 58 because it was made on the Court's initiative seems to me to involve the most hypertechnical sort of reasoning.

If we are to follow our Rules the order of June 11, and with it today's order, must fall, for this litigation must be considered to have been closed on December 5, 1955, when the Court denied the Government's first petition for rehearing.

## II.

Rule 58, by marking the end of a case in this Court, is intended to further the law's deep-rooted policy that adjudication must at some time become final. I think we should follow it. Prior to 1948, the outside limit of rules of finality in the federal courts was the end of the term, because, except for the extraordinary writs, federal courts were considered to have no power to deal with their

---

[8] The writer of this opinion, and those who join him, share in the responsibility for the issuance of the order of June 11.

[9] Under the old Rules, it was not thought possible to petition for rehearing of a denial of rehearing. Such petitions were treated as miscaptioned untimely petitions for rehearing of the original order. Presumably the same practice obtains under the Revised Rules. Otherwise, an endless procession of "timely" petitions for rehearing could be filed, one every 25 days *ad infinitum*.

judgments after the end of the term at which they were rendered. *Bronson* v. *Schulten,* 104 U. S. 410, 415. In 1948 Congress abolished the "end of term" rule by a statute, 28 U. S. C. § 452,[10] which was expressly made applicable to this Court. 28 U. S. C. § 451. The effect of § 452 was to leave the federal courts untrammeled in establishing their own rules of finality. But the history of § 452 indicates that the courts were to have no power to re-examine their judgments otherwise than in accordance with their established rules or statutes. Section 452 was modeled on Rule 6 (c) of the Federal Rules of Civil Procedure.[11] See the Reviser's Note to § 452, 28 U. S. C., p. 4142. As originally promulgated in 1938, Rule 6 (c) had referred only to the "expiration of a term" and not to its "continued existence." In 1944 this Court held that a District Court had inherent power to vacate a judgment and enter a new one, with the effect of extending a party's right to appeal, notwithstanding such action was not authorized by any rule of the District Court, because the term had not yet expired. *Hill* v. *Hawes,* 320 U. S. 520, 524. Thereafter, Rule 6 (c) was amended to provide that the *"continued existence or* expiration" of the term should not affect the power of a court. The purpose was "to prevent reliance upon the continued existence of a term as a source of power to disturb the finality of a judgment upon grounds other than those stated in these rules." Advisory Committee on Rules of Civil

---

[10] So far as pertinent, § 452 provides: "The continued existence or expiration of a term of court in no way affects the power of the court to do any act or take any proceeding."

[11] "The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the continued existence or expiration of a term of court. The continued existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which has been pending before it."

Procedure, Report of Proposed Amendments to Rules, H. R. Doc. No. 473, 80th Cong., 1st Sess. 50 (1946). The "continued existence or" language of amended Rule 6 (c) was taken bodily into § 452.

The history of § 452 thus casts grave doubt, to say the least, on the power of the Court to do what it has done in this case, for its action was certainly not taken "upon grounds . . . stated in [its] rules." [12] I recognize that § 452 does not prevent the Court from changing its Rules, but if the statute means what its history suggests, such changes should be made on a general and not *ad hoc* basis, lest cases which are alike be treated differently. [13]

This Court, however, has never faced the problems raised by § 452, but has proceeded on the assumption that the statute does not affect the Court's inherent power over its judgments; in other words, that by resorting to such power the Court may affect judgments by action which would otherwise be out of time under the Rules. If that view be correct, it follows that finality of adjudication in this Court ultimately depends on the Court's self-restraint. That, and the doubtful meaning of § 452,

---

[12] Text writers have disagreed as to the effect of § 452. Compare Wiener, The Supreme Court's New Rules, 68 Harv. L. Rev. 20, 84–86 (1954), with Stern & Gressman, Supreme Court Practice (2d ed. 1954), 349, 355.

[13] It may be suggested that, because this Court has no rules comparable to Fed. Rules Civ. Proc., 60 (a) and (b), permitting applications for subsequent changes in judgments to be made on various grounds, it would be unfortunate to construe § 452 as prohibiting this Court from exercising inherent power to correct judgments out of time for such things as fraud, mistake, and clerical error. To my way of thinking, it would be preferable to meet this problem by adding to our Rules, rather than by making *ad hoc* exceptions to Rule 58. The latter course, I fear, is bound to lead to the sort of thing that has happened in this case, leaving litigants in uncertainty as to when they may safely consider their cases closed in this Court.

seem to me in any event to argue strongly against departures from Rule 58—the only Rule of finality in this Court—except in rare instances. I now turn to the question of whether this is such a case.

### III.

The past practice of the Court shows that its inherent powers have always been exercised most sparingly. Thus, prior to enactment of § 452 in 1948, the Court, so far as I can discover, had never in its history departed from the "end of term" rule by granting a petition for rehearing after the end of the term at which a judgment had been rendered.[14]  Between 1948 and the effective date of Rule 58 (July 1, 1954), one of whose purposes was to tighten the rules ending litigation in this Court, I can find only four cases in which untimely relief was granted: *Clark* v. *Manufacturers Trust Co.,* 337 U. S. 953, vacated and remanded *sub nom. McGrath* v. *Manufacturers Trust Co.,* 338 U. S. 241; *Goldbaum* v. *United States,* 347 U. S. 1007, 348 U. S. 905; *Banks* v. *United States,* 347 U. S. 1007, 348 U. S. 905; *McFee* v. *United States,* 347 U. S. 1007, 348 U. S. 905.[15]  Of these only *Clark* bears any similarity to this case.[16]  *Goldbaum, Banks* and *McFee* were

---

[14] See Charles Elmore Cropley, Report of Survey by the Clerk of Rules and Practice in Relation to Petitions for Rehearing, Prepared by Direction of the Chief Justice, with Suggestions and Supporting Data (January 7, 1947).

[15] See also *California* v. *Zook,* 337 U. S. 921, in which a motion for leave to file a petition for rehearing out of time was granted, apparently on grounds of excusable neglect, and the petition was simultaneously denied; and *Land* v. *Dollar,* 341 U. S. 737, 738, in which a belated "motion for leave to file a motion for reconsideration" of a denial of certiorari was continued on the docket. The motion was ultimately withdrawn. 344 U. S. 807.

[16] *Clark* involved questions under the Trading with the Enemy Act, an untimely petition for rehearing of the denial of certiorari being granted because of a subsequently arising conflict. Unlike the present

criminal "net worth" tax cases in which the Court, *sua sponte,* restored the cases to the docket pending decision of *Holland* v. *United States,* 348 U. S. 121, the cases thereafter being remanded for reconsideration in light of *Holland.* I need hardly say that the granting of untimely relief in criminal cases presents considerations not found in civil cases.

Of particular significance here is what has happened since Rule 58 became effective. From then until today I have discovered but three cases in which the Court has granted rehearing out of time, all involving situations quite dissimilar to that presented here: *Remmer* v. *United States,* 348 U. S. 904; *McNally* v. *Teets,* 352 U. S. 886; *Achilli* v. *United States,* 352 U. S. 1023.[17] *Remmer* was a criminal case which had been remanded to the lower court for further proceedings, and where the petition for

case, there was no other pending case through which the question could be settled by this Court for the future, because the "conflict" case was never appealed. See *McGrath* v. *E. J. Lavino & Co.,* 91 F. Supp. 786, 787. More recently the Court has consistently denied belated petitions for rehearing based upon claimed subsequent conflicts. See the cases cited at pp. 108–109, *infra,* and particularly *Mondakota Gas Co.* v. *Montana-Dakota Utilities Company,* 349 U. S. 969, where the Court denied leave to file an untimely petition for rehearing even though the decision below had been expressly disapproved by an intervening and controlling decision of this Court. See *Parissi* v. *Telechron, Inc.,* 349 U. S. 46, 47.

The *Clark* case is not a persuasive precedent on any of the legal questions involved in this case, because for all that appears neither side called the attention of the Court to the then recent enactment of § 452 and its possible restrictive effects on prior rules relating to rehearings.

[17] Cf. *Born* v. *Laube,* 348 U. S. 932; *Bernstein* v. *United States,* 352 U. S. 977; *Mekolichick* v. *United States,* 352 U. S. 977; *Cliett* v. *Scott,* 353 U. S. 918, in which the Court simultaneously granted motions for leave to file petitions for rehearing out of time, and denied the petitions for rehearing. See also *Smith* v. *United States,* 353 U. S. 921.

rehearing raised questions which could again be brought to this Court on certiorari; rehearing thus served to avoid the delay and expense of further intermediate proceedings below, and hardly could be claimed to conflict with the policy of finality. *McNally,* also a criminal case, simply involved clarification of the Court's earlier order denying certiorari, in order to make clear that it covered two judgments below against the petitioner instead of only one. For lack of such a clarification, the petitioner's application for habeas corpus had been denied by a federal district court on the ground that, having failed to petition for certiorari from one of the two state decisions against him, he had not fully exhausted his state remedies. *Achilli* presented the same features as *Remmer,* in that it was a criminal case presenting a question that could again be raised in proceedings below and then brought to this Court in due course on certiorari. Indeed, exactly that happened in the *Achilli* case: petitioner, not anticipating this Court's willingness to reconsider its original denial of certiorari, raised the same question a second time before the District Court, obtained a new decision, and petitioned successfully for certiorari. 353 U. S. 909. The net effect of the Court's untimely order, therefore, was to bring here more quickly a question that would arrive eventually in any case. Three other cases during this period, though not arising on petition for rehearing, may be considered to have involved out-of-time action by the Court: *Florida ex rel. Hawkins* v. *Board of Control,* 350 U. S. 413; *Boudoin* v. *Lykes Bros. S. S. Co.,* 350 U. S. 811, and *Cahill* v. *New York, N. H. & H. R. Co.,* 351 U. S. 183. All of them, however, involved the correction of errors in the Court's own mandates, and not, as here, the overturning of another court's decision that had long since been permitted to become final.

The other side of the coin is also illuminating. I find that since 1948 there have been some 191 untimely appli-

cations for rehearing, or the equivalent,[18] as against only 10 instances of untimely action, 6 in response to applications and 4 on the Court's initiative. Since the adoption of Rule 58 in 1954, the Court has been asked on 40 occasions to grant rehearing out of time of orders denying certiorari,[19] and, with the exception of *McNally* v. *Teets* and *Achilli* v. *United States, supra,* cases that may fairly be described as unique, and that are certainly unlike this one, each time it has refused. In 13 of the 40 cases, relief was denied despite the claimed development of a conflict.

---

[18] The count includes untimely petitions for rehearing, successive petitions for rehearing, motions for leave to file petitions for rehearing, motions for leave to file successive petitions for rehearing, and motions and petitions for reconsideration of denial of rehearing or of leave to file petitions for rehearing. See 335 U. S. 838 (two cases), 855, 864 (six cases), 888, 894 (two cases), 899, 900; 336 U. S. 911, 915 (four cases), 921, 929 (two cases), 932 (two cases), 941, 955, 963, 971; 337 U. S. 911, 920, 921 (two cases), 934, 950 (three cases), 953 (two cases), 961 (five cases); 338 U. S. 841 (four cases), 863, 882, 889, 939, 940, 953; 339 U. S. 906, 916, 926, 936, 950, 954, 972, 973 (three cases), 992 (two cases); 340 U. S. 846, 848, 898, 907, 918, 939, 940; 341 U. S. 917, 928, 933, 937, 956 (four cases); 342 U. S. 842, 844, 856, 874, 880, 895, 899 (two cases), 907 (two cases), 915; 343 U. S. 917 (two cases), 931, 932, 952, 959 (two cases), 989 (three cases); 344 U. S. 848, 849, 850 (two cases), 882, 905; 345 U. S. 914, 931 (two cases), 937 (two cases), 945, 960, 961, 971, 1003, 1004; 346 U. S. 841, 843 (two cases, total of three petitions), 880 (three cases), 881, 904, 905 (two cases), 917, 918; 347 U. S. 908 (two cases), 911 (two cases), 924 (three cases), 940, 1007 (three cases), 1021; 348 U. S. 851 (two cases), 853 (two cases), 889, 904, 932, 939 (three cases), 940, 960 (two cases); 349 U. S. 917, 925, 948, 969 (two cases); 350 U. S. 413, 811, 854, 856, 919, 920, 955, 960, 976; 351 U. S. 183, 915 (two cases), 928, 929, 958, 990; 352 U. S. 860, 861 (four cases), 886, 913, 950, 977 (two cases), 1019, 1023; 353 U. S. 918, 921.

[19] See 348 U. S. 851 (two cases), 853 (two cases), 889, 932, 939 (three cases), 940, 960 (two cases); 349 U. S. 917, 925, 948, 969 (two cases); 350 U. S. 854, 920, 955, 960, 976; 351 U. S. 915 (two cases), 928, 929, 958, 990; 352 U. S. 860, 861 (three cases), 886, 913, 977 (two cases), 1019, 1023; 353 U. S. 918, 921.

See *Fraver* v. *Studebaker Corp.*, 348 U. S. 939; *Powell* v. *United States*, 348 U. S. 939; *Cowles Pub. Co.* v. *Labor Board*, 348 U. S. 960; *Jones* v. *Lykes Bros. S. S. Co.*, 348 U. S. 960; *Lopiparo* v. *United States*, 349 U. S. 969; *Mondakota Gas Co.* v. *Montana-Dakota Utilities Co.*, 349 U. S. 969; *Zientek* v. *Reading Co.*, 350 U. S. 960; *Preferred Ins. Co.* v. *United States*, 351 U. S. 990; *International Molders & Foundry Workers* v. *Western Foundry Co.*, 352 U. S. 860; *Fairmont Aluminum Co.* v. *Commissioner*, 352 U. S. 913; *Bernstein* v. *United States*, 352 U. S. 977; *Mekolichick* v. *United States*, 352 U. S. 977; *Consolidated Edison Co. of N.Y., Inc.* v. *United States*, 352 U. S. 1019.[20]

This history of past practice justifies the assertion that the Court has exercised its inherent power with a sharp eye to the "principle that litigation must at some definite point be brought to an end," *Federal Trade Commission* v. *Minneapolis-Honeywell Regulator Co.*, 344 U. S. 206, 213, and, in recent years at least, has acted only where it felt that the interests of justice plainly outweighed considerations of finality.

What about this case? There is nothing to distinguish it from any other suit for a money judgment in which a conflict turns up long after certiorari and rehearing have been denied. The most that can be said in justification of the Court's action is that otherwise Ohio Power would not have to pay taxes which Allen-Bradley and National Lead must pay as a result of the much later decisions in their cases. Yet the Court twice faced and rejected that very possibility many months ago, (1) when it denied the Government's timely petition for rehearing, despite the request that consideration of it be deferred until the Court of Appeals had decided the *National Lead* case, and (2) when it denied the Government's second, and

---

[20] As to *Bernstein* and *Mekolichick*, see note 17, *supra*.

untimely, petition for rehearing in the face of the conflict with *National Lead*. And in any event, this is surely not the kind of injustice that warrants overriding the policy of finality of adjudication. What has happened here is commonplace; indeed it arises in every instance where the Court grants certiorari to settle any but the most recent conflict. Perhaps out-of-time action may be justified in some instances where the time interval between a finally decided case and a subsequent contrary decision of this Court is short. But we do not have that situation here, where more than 15 months elapsed between the denial of certiorari in *Ohio Power* (October 17, 1955) and our decisions in *Allen-Bradley* and *National Lead* (January 22, 1957), and where in the interval the Court had twice denied rehearing, with the very factors before it which are now said to justify its present action. If the rules of finality are to have real significance in this Court, I submit that by every token the taxpayer here was entitled to believe that its case had been irrevocably closed.

There is an additional reason why this case should not now be reopened. Had this case come to us from the Tax Court, our Court would have had no power to do what it has done, it being well established that when certiorari has been denied the power of this Court to affect decisions of the Tax Court ends with the denial of a petition for rehearing, or, where no such petition has been filed, with the running of the 25-day period within which rehearing may be sought. Internal Revenue Code of 1939, § 1140, now Internal Revenue Code of 1954, § 7481 (2)(B); *R. Simpson & Co. v. Commissioner*, 321 U. S. 225; and see *Helvering v. Northern Coal Co.*, 293 U. S. 191. It is an odd circumstance that the Court should have reaffirmed this rule only a few weeks ago. *Lasky v. Commissioner*, 352 U. S. 1027. The undesirability of according different treatment to tax cases arising from different

sources scarcely requires comment. For me, this consideration alone is a sufficient reason for denying relief in this case.

For the reasons given I must dissent. I can think of nothing more unsettling to lawyers and litigants, and more disturbing to their confidence in the evenhandedness of the Court's processes, than to be left in the kind of uncertainty which today's action engenders, as to when their cases may be considered finally closed in this Court.