UNITED STATES of America,
Petitioner,

v.

AMERICAN CAN COMPANY,
Respondent.

Civ. A. No. 26345.

United States District Court
N. D. California, S. D.

Dec. 8, 1954.

See also 87 F.Supp. 18.

Lyle L. Jones, Chief, Arthur H. Tibbits, Don H. Banks, San Francisco, Cal., James O. Sullivan, Burlingame, Cal., Antitrust Division, Department of Justice, for petitioner.

Frederick M. Fisk, W. Burleigh Pattee, San Francisco, Cal., Chickering & Gregory, San Francisco, Cal., of counsel, for respondent American Can Co.

HARRIS, District Judge.

Petitioner has brought contempt proceedings against respondent American Can Company. The United States asserts that the respondent's conduct in connection with its dealings with Davis Bros. Fisheries Corporation (hereafter called "Davis") during the month of January, 1954, constituted a violation of this Court's decree.[1]

---

1. The government charges contravention of Section II 1-d which section enjoins "conditioning the availability of * * * containers * * * upon the purchase or lease of container closing machines * * * from defendant * * *."

The petition charges American with having violated Section II, paragraph 6, of the Judgment which states defendant is "hereby restrained and enjoined from refusing to sell or from discriminating in the sale of * * * containers to any user because such user does not enter into or propose to enter into any particular contract, agreement or arrangement for the * * * supply of such container."

The United States charges a violation of Section II, paragraphs 1-b and 1-c which read: "Selling * * * containers

* * * on or accompanied by any condition, agreement or understanding:

"(1) That the purchaser or recipient thereof shall not use such containers in connection with container closing machines * * * made or sold by anyone other than defendant; or (2) that the purchaser or recipient thereof shall use such containers * * * in container closing machines * * * made or sold by defendant.

"Entering into, adopting, adhering to or furthering any agreement or course of conduct for the purpose of, or one which in effect constitutes, the leasing, selling or making or adhering to a contract contrary to the provisions of subparagraphs (a) and (d) above."

Davis, situated in Gloucester, Massachusetts, was a large fish canner. For many years it has purchased metal containers from respondent American Can Company (hereafter called "American").

During the canning season of 1953 Davis encountered difficulties in its sardine pack. A large percentage of swells slowed up operations on the assembly lines. Several carloads throughout the country contained numerous burst cans which led to cancelled orders. In some areas cases of sardines were consigned to public dumps or destroyed. At one time during the packing season, swells among the cans ran more than 20% of the pack. Losses suffered by Davis jeopardized its financial position. Toward the end of the year 1953 President O'Hara of Davis was compelled to close his plant and make arrangements for new financing for the year 1954.

Davis commenced an action against American in the United States District Court, for the District of Massachusetts, hereinafter called "the Boston Law Suit",[2] seeking damages for the losses which it suffered by reason of bursting cans, as well as cancelled contracts. Although removed from the present issues, the Boston law suit will be considered in determining whether American engaged in conduct in wilful disregard of the provisions of the decree.

Petitioner contends that the evidence demonstrates beyond a reasonable doubt that American defied the provisions of the Judgment to better its position in the Boston law suit and was not acting on a good faith interpretation of the Judgment. It is asserted that the compulsion exercised by American, was intended to work a forfeiture of rights and remedies available to Davis, as a result of its failure or refusal to execute the equipment lease.

After completing necessary arrangements among former employees, fishermen who would supply the catch for canning, and lending institutions, O'Hara reached the point where he was prepared to re-commence canning. On January 6, 1954, he placed an oral order for cans with American.

As conditions precedent for the delivery of cans American demanded that Davis meet the following requirements:

(1) Pay for cans with a certified check before delivery. This, Davis was prepared and willing to do.

(2) Sign the current can closing machine lease. Davis had leased American machinery since the inception of respondent's new leasing program following the signing of this Court's decree. For the lease year commencing May 1, 1953, Davis had retained its machinery but had not signed the lease. Davis had failed to sign originally for the asserted reason that it intended to buy the equipment. Later in the year 1953 Davis had refused to sign upon advice of counsel in the Boston law suit.

(3) Sign certain schedules for delivery of cans.

(4) Sign an open order acknowledgment form. As one of the conditions to be included in the form American prepared a clause which would have compelled Davis to accept cans without American's customary warranty until such time as American approved of the methods and processes used by Davis. This clause appeared in an inter-company communication. It was never actually embodied in any open order contract, nor was it brought to the attention of Mr. O'Hara.[3]

Finally, the petitioner charges American with the violation of Section III paragraph (12) which reads in part:

"As long as defendant leases any container closing machine * * * defendant is ordered and directed during any rental period to offer to lease and to lease such containers * * * on the basis of uniform and non-discriminatory rentals, terms and conditions of lease."

2. Davis Bros. v. American Can Company, No. 53–1058–W, U. S. District Court for the District of Massachusetts.

3. "In view of the fact that our research department has established that your packing methods and processes do not

Davis refused to comply with the conditions imposed by American with respect to signing the 1953–54 lease on can closing equipment, or the open order acknowledgment form. Mr. O'Hara, as representative of Davis, had been informed by his attorney that the signing of these documents might limit or waive the damage recovery of Davis in its pending action in the Boston Law Suit.

Commencing January 6, 1954, Mr. O'Hara attempted to negotiate with American in order to obtain cans. The record discloses that these negotiations proved to be fruitless until early February when American agreed to supply Davis without imposing conditions pertaining to signatures on leases or open order acknowledgment forms; nor did American demand regular schedules for delivery. By the February date, however, Davis was no longer able to commence operations.

The government contends that under the terms of this Court's decree American must sell cans to any buyer without imposing conditions such as American sought to do in the instant case. American admits that its officers, on advice of their counsel, Mr. Shanholt, refused to furnish cans to Davis during January 1954, unless O'Hara would agree to comply with the several conditions imposed.

American does not dispute the essential facts. Rather, it points out that its conduct toward Davis met the requirements of the Court's decree. Under the terms of the Judgment, American must deal with all lessees on the same terms. The lease which Davis had not signed was identical with the lease entered into between American and its other customers. In like measure, the open order contract contained provisions identical with those in all open order forms, excepting that in this instance by reason of the pending differences American sought to protect itself *in futuro* from claims arising out of asserted faulty packing methods as distinguished from improper or defective equipment.

The particular clause contained in the equipment lease contract which Davis refused to sign and upon which American placed such significance pertained to damage liability on the part of American. Under the terms of the standard lease form and open order acknowledgment contract, American protected itself from all damages except those directly attributable to defective cans or can closing equipment. Liability would be thus limited to the cost of replacing defective cans or the contents thereof.

Counsel for American and the legal advisers of Davis in good faith differed on the legal effect of O'Hara's signing the 1953–54 lease on behalf of Davis. Mr. Shanholt took the view that O'Hara's signature would not work *retroactively* so as to endanger Davis' position in the Boston Law Suit. The lawyers for Davis believed that O'Hara's execution of the instrument might tend to limit liability.

At the contempt hearing, Mr. Shanholt testified as to his understanding and legal construction of the instrument and his intention. His testimony stands uncontradicted in the record. He stated categorically that it was not his intention to have the unsigned lease operate retroactively. The government's position that his legal theory was erroneous would not lead to the conclusion that Shanholt was acting in bad faith or that his conduct was of a wilful nature. Cf. United States v. Dollar, D.C., 97 F.Supp. 50, 56.

In requesting Davis to sign the open order contract and the lease, American was placing that company in the same position as any other user of cans and can closing equipment. When O'Hara refused to sign the open order contract and lease agreement, he was attempting to place Davis in a preferential position.

meet the standard of customary practice of the trade, the containers shipped in accordance with your order carry no warranties. At such time as your packing methods and processes have been cor- rected to meet the standard of customary practice of the trade and after our examination and written approval of these methods and processes our standard warranties will be extended."

Davis had the equipment in its possession for many months without having signed the lease. The fact that the lawyers for Davis advised O'Hara not to sign the instruments in question does not create an intention on the part of American to violate this Court's decree. It is not proper to translate and superimpose the views of Boston counsel upon the representatives of American and thereby establish wilfulness on their part on requiring the signing of the instruments in question.

American admits that it was anxious to obtain the protection afforded by the lease agreement in order to avoid damages which might arise in the *future* by reason of subsequent losses suffered by Davis Bros. But American observes that it made no effort to compel Davis to lease its machinery nor to retain its can closing equipment. It merely expected Davis, if it chose to use American machinery, to meet the requirements applicable to all lessees.

■ The dispute between the government and American narrows itself to this question: Did American, by imposing as conditions for the sale of containers to Davis, the signing of a lease for can closing equipment and an open order acknowledgment contract, violate the decree of this Court? In themselves, the conditions American actually presented to Davis were legitimate and proper under the terms of the judgment of the Court.

In order to sustain petitioner's contention that these several conditions violated the decree, the Court would necessarily have to draw inference upon inference from a record barren of any reliable evidence that American, through its agents and servants, sought to and did impair, hamper or defeat the rights of Davis in connection with the Boston law suit.

Mr. Shanholt, the lawyer for American, explained the circumstances surrounding the Davis transaction. His is the only testimony before the Court regarding the intention or alleged wilfulness on the part of American in imposing the requirements submitted to O'Hara.

The opinion or view of counsel for Davis to the effect that Mr. O'Hara's signature on the lease might forfeit certain rights, or that consent to the form of the open order contract would operate as an admission against interest, is not sufficient to make out a case of criminal contempt.

American did not attempt to condition availability of containers upon the lease of container closing machines. Rather, it sought to compel Davis to execute a lease for machines, which it had previously utilized and which it intended to continue to use. Nor did American seek to discriminate against Davis in requesting its President, Mr. O'Hara, to sign agreements which were non-discriminatory in character as among all lessees of American.

■■ The burden of proof rests upon petitioner. This imposes the burden of proving that the respondent wilfully performed the acts which assertedly violated the Judgment. The respondent is entitled to all the protection afforded a defendant in an ordinary criminal case, and the burden is upon the government to establish its guilt beyond a reasonable doubt. United States ex rel. Porter v. Kroger Grocery & Baking Co., 7 Cir., 163 F.2d 168. The burden of proof has not been discharged. The evidence, and all inferences to be drawn therefrom, is susceptible of the construction that American was acting on a good faith interpretation of the Judgment.

The several questions presented whether the lease, if signed, would have a retro-active operation on the accrued rights in the Boston law suit; whether the relationship of bailor and bailee existed between American and Davis; whether Davis was entitled to preferential attention and position over all other customers of American, were the subject of legal controversy and serious debate. That lawyers, in the spirit of advocacy, might have divergent views is not a novel

situation, and should not prompt this Court to base upon pure inference and speculation a judgment of criminal contempt.

Whether Davis after the termination of the equipment lease, held the same under better or different terms regarding warranties and the like, will probably be the subject of determination in the Boston law suit. It has no place in the instant case.

Accordingly, it is ordered that the petition filed herein by the United States of America, for an order to show cause why respondent, American Can Company, should not be found in criminal contempt, be, and the same hereby is, dismissed and the order to show cause vacated and discharged.